PEOPLE v JOESEYPE JOHNSON

PEOPLE v RING

Docket Nos. 58560, 60557. Argued November 14, 1978 (Calendar Nos. 2, 3).—Decided October 29, 1979.

Joeseype Johnson was convicted by a jury in Wayne Circuit Court, Michael L. Stacey, J., of felonious assault. The trial court refused the defendant's request to instruct the jury that the crime of felonious assault includes as an element a specific intent to inflict an injury on another and instead instructed the jury that a felonious assault must be an "intentional assault". The Court of Appeals, D. E. Holbrook, Jr., P.J., and McGregor and N. J. Kaufman, JJ., affirmed in an unpublished per curiam opinion (Docket No. 22311). Defendant appeals.

REFERENCES FOR POINTS IN HEADNOTES

[1, 8, 12, 13] 6 Am Jur 2d, Assault and Battery §§ 3, 4.

[2, 8] 6 Am Jur 2d, Assault and Battery §§ 3, 6.

[3, 4, 10, 14, 28] 6 Am Jur 2d, Assault and Battery §§ 9, 37, 51.

[5, 6, 9, 11, 13, 17, 19, 20] 6 Am Jur 2d, Assault and Battery §§ 51, 53.

[7, 19, 20] 6 Am Jur 2d, Assault and Battery §§ 49, 50.

[15] 6 Am Jur 2d, Assault and Battery § 53.

[16, 17] 6 Am Jur 2d, Assault and Battery § 2.

[18] 21 Am Jur 2d, Criminal Law § 17.

[21] 6 Am Jur 2d, Assault and Battery §§ 2, 3.

[22] 21 Am Jur 2d, Criminal Law §§ 110-112.

[23] 6 Am Jur 2d, Assault and Battery §§ 2-4.

[24] 6 Am Jur 2d, Assault and Battery §§ 3, 4, 8, 9.

[25, 29] 73 Am Jur 2d, Statutes § 225.

[26] 21 Am Jur 2d, Criminal Law §§ 81-84.

[27] 6 Am Jur 2d, Assault and Battery §§ 6, 9.

[30] 6 Am Jur 2d, Assault and Battery § 97.

[31] 6 Am Jur 2d, Assault and Battery §§ 34, 53, 54.
  Fact that gun was unloaded as affecting criminal responsibility. 79 ALR2d 1412.

[32] 6 Am Jur 2d, Assault and Battery §§ 28, 32, 33.

[33] 6 Am Jur 2d, Assault and Battery §§ 34, 54.

[34] 73 Am Jur 2d, Statutes § 355.

[35, 38] 16 Am Jur 2d, Constitutional Law § 418.

[36] 20 Am Jur 2d, Courts § 71.

[37] 20 Am Jur 2d, Courts §§ 74, 190.

David Ring was charged with felonious assault. The Kent Circuit Court, John T. Letts, J., prior to trial, granted the defendant's request for an instruction to the jury that an element of felonious assault is "a specific intent to do bodily injury". The Court of Appeals, Danhof, C.J., and Beasley, J. (M. F. Cavanagh, J., dissenting), denied leave to appeal from the order of the court (Docket No. 77-3295). The people appeal.

The Supreme Court issued a memorandum opinion, signed by all of the Justices, summarizing the holding of the Court on three points. At least four Justices concurred in each holding. In addition, there were opinions by Justice Williams joined by Chief Justice Coleman and Justice Moody, by Justice Ryan joined by Justice Fitzgerald, and by Justice Levin joined by Justice Kavanagh. The memorandum opinion *held:*

1. A simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

2. The jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery.

3. The instruction in *Johnson* was deficient in that it failed adequately to inform the jury of the intent requirement and in that it neglected to present the alternative "reasonable apprehension of receiving an immediate battery" form of felonious assault. The jurors in *Ring* should be instructed that the defendant can be convicted if he intended to injure the victim, or put him in apprehension of an immediate battery.

Reversed and remanded for new trial in *Johnson.*

Affirmed as modified and remanded for trial in *Ring.*

Justice Williams wrote:

The crime of felonious assault does not include as an element a specific intent to inflict an injury on another.

1. The statutory language simply requires an assault with a dangerous weapon. In fact, the absence of two kinds of specific intent, *i.e.,* intent to commit murder and intent to inflict great bodily harm less than murder, is required. Consequently, the intent necessary is the general intent to do acts involved in the assault.

2. Felonious assault is but one of a number of assaultive offenses listed in chapter XI of the penal code. Some of the other assaultive offenses specifically include an element of intent, for example, "assault with intent to do great bodily harm less than murder". This demonstrates that the Legisla-

ture is capable of expressing a requirement of a specific intent for an assaultive offense and that the Legislature did not wish to require a specific intent as an element of felonious assault.

3. At common law assault and battery were misdemeanors. When codifying the criminal law, the Legislature created a series of more serious or "aggravated" offenses which did not exist as separate crimes at common law. The obvious intent of the Legislature is to punish more severely those assaults accompanied by some degree of aggravation, *e.g.*, serious injury, use of a dangerous weapon, or a specific intent. Therefore, the basic assault must be established, accompanied by the aggravating circumstances to meet the requirements of the particular sections. The offense of felonious assault requires an assault aggravated by the use of a dangerous weapon. There is no support for the argument that the offense requires more than those elements. The intent element of felonious assault is shown by an intentional unlawful act, the same general intent needed for simple assault. To the extent that previous caselaw conflicts with this holding, it is overruled.

4. The instruction given to the jury in *Johnson* included the pertinent parts of the statute and stated that the crime charged was "an intentional assault with a revolver, which is a dangerous weapon". This instruction was sufficient to apprise the jury of the elements of the crime of felonious assault.

5. The instruction which the trial court agreed to give in *Ring*, however, made "intent to do bodily injury" a mandatory element of felonious assault. That instruction is erroneous because it would require the prosecution to show a specific intent to inflict injury.

Justice Ryan agreed with Justice Levin's reasoning in disposing of the issue whether felonious assault includes as an element a specific intent to do bodily harm. He disagreed, however, with Justice Levin's reading of recent caselaw on the definition of criminal assault and his conclusion that in Michigan unlawfully putting another in reasonable apprehension of injury is not a crime.

1. A simple criminal assault is made out from *either* an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving a battery. The Court has not adopted a definition of criminal assault different from that of its decision in 1910 in *People v Carlson,* but merely clarified and restated the observation that there are two kinds of criminal assault, attempted battery and putting in fear.

2. Justice Levin suggests that the Court has also held, in a

decision in 1923, *People v Doud,* before defendants Johnson and Ring were charged with felonious assault, that felonious assault cannot be established by proof of conduct putting another in apprehension of injury. The 1923 case, however, was concerned with the correctness of jury instructions which shifted the inquiry away from the intent of the defendant and focused instead upon the belief or fear of the victim that the defendant intended to fire a weapon at him. The Court properly concluded that such fear is not to be understood as *governing* upon the question of the intent or purpose of an accused under the assault statute. The Court did not say that the accused's intent or purpose to put the victim in reasonable apprehension of an immediate battery would not support a conviction of assault.

3. The instruction to the jury in *People v Johnson* was deficient in two respects: it failed adequately to inform the jury of the specific intent requirement and it neglected to present the alternative form of felonious assault, intent to put the victim in apprehension of an immediate battery. The proposed instruction to the jury in *People v Ring* also did not present the alternative form of felonious assault. The court in each case should instruct the jury on the alternative definitions of assault, and on specific intent that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery.

Justice Levin, dissenting, wrote:

1. Although the Legislature's intent is controlling, since the dissenters agree with the lead opinion that it intended that felonious assault be common-law assault committed with a dangerous weapon, the meritorious constructional issue turns solely on the elements of the common-law offense. The question presented is whether the definition of the common-law crime of assault has been or should be judicially expanded in Michigan to include menacing without intent to injure. A specific or particular mental element, intent to injure, is required for commission of the common-law offense. The Legislature incorporates that mental element when it uses the term "assault", and its failure to restate the element explicitly in the statute does not eliminate it as an element. There are many common-law offenses for which no mental element is stated in the penal code but for which there is a specific or particular mental element required. Thus the argument based on the Legislature's failure to restate the "intent to" required for commission of an assault is at odds with the jurisprudence. Statutory analysis does not assist in determining what constitutes "the

basic assault" once it is agreed that it is the common-law crime of assault.

2. At common law, the *crime* of assault was an attempted battery. A necessary element of all attempts is an intention to commit another offense. An element of the other offense here, battery, is a touching, either injurious or offensive. Hence an element of the crime of assault at common law was an intention to touch either injuriously or offensively.

3. A necessary element of the tort of *civil* assault is apprehension of injury. Those jurisdictions which have expanded the definition of the crime of assault to include menacing (creating apprehension of injury) have generally done so without recognizing the distinction at common law between civil and criminal assaults. In Michigan, however, that distinction has heretofore been preserved. This Court, when first construing the felonious assault statute in 1923 in *People v Doud,* 223 Mich 120; 193 NW 884 (1923), upon full consideration of the law in this and other jurisdictions on the question whether an assault can be committed by menacing (creating apprehension of injury), concluded that the defendant's intention was controlling and that the jury must be instructed that it cannot convict unless it concludes that he intended "to do an injury" ("inflict a corporal hurt"), and that menacing without intent to injure does not make out the offense. The distinction between the criminal- and civil-law definitions of assault was carefully observed and preserved.

4. The lead opinion cites *People v Burk,* 238 Mich 485; 213 NW 717 (1927), *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), and *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), as the "controlling case law". Neither *Burk* nor the lead opinion in *Sanford* speaks at all of "specific intent". Neither opinion adverts to *Doud's* holding that menacing is not assault; no party in *Burk* or *Sanford* contended that *Doud* was incorrectly decided. The question whether the crime of assault can be committed by menacing was not presented, argued, or discussed in *Burk.* The declaration in the lead opinion in *Sanford* that the common-law offense of assault can be committed by either an attempted battery or creation of reasonable apprehension of injury was not necessary to decision, and is dictum, not "controlling case law". Nor is the decision of the Court of Appeals in *Richard Johnson* "controlling case law". The concurring opinion in this case states that four members of the presently seated Court "adopted the reasoning and accepted the conclusion of Justice Williams in *Sanford".* Three Justices signed Justice Williams' opinion in

*Sanford* and two concurred in the result and agreed with the disposition of some of the issues, but a Justice who agrees with the result or disposition has not adopted the reasoning or dictum of an opinion; a Justice is free to state later that he adopts the reasoning or dictum of an opinion but such a later agreement cannot have retroactive effect on the law.

The concurring opinion in this case is correct in its statement that *Doud* did not say, in so many words, that intent to put the victim in reasonable apprehension of an immediate battery could not support a conviction of felonious assault. However, an analysis of *Doud* shows that the Court considered and clearly rejected the alternative "menacing" form of assault. The concurring opinion in this case relies on *People v Carlson,* 160 Mich 426; 125 NW 361 (1910), as holding that there are two kinds of criminal assault, attempted battery and putting in fear, and states that *Sanford* merely restates and clarifies *Carlson. Carlson* did not so hold; it said rather that the two definitions, "taken together, *may* be said to include all necessary elements". Thus the assertion that the law was changed before *Sanford* is incorrect.

It could not be said before or after *Sanford,* until today, that this Court had declared that threatening or menacing assaults were part of the law of simple or felonious assault. It cannot properly be said that a defendant had been forewarned. The lead and concurring opinions in this case, in combination with the memorandum opinion, have changed the law.

Whether the rule adopted is the rule in a majority of jurisdictions or not, this Court should acknowledge what it is doing and give a better reason than that others are doing it for adoption of a new rule of law overruling a decision of the Court, nearly contemporaneous with the enactment of the statute, which has guided the disposition of cases for more than half a century.

5. The characterization of an offense as a general or specific intent crime, while important for some purposes, is at best a conclusion generally derived from the elements of the offense. It is therefore circular to decide what those elements are based on the conclusion that the offense is a general or specific intent crime.

6. Even if menacing is to be an alternate means of committing the crimes of assault and felonious assault, it does not follow that there is no specific or particular mental element. In those jurisdictions where at common law menacing is an alternate means of committing the offense, an intent to threaten is an element of the offense. There thus must be either an intent

to injure/touch offensively *or* an intent to threaten. It appears to be unprecedented in any jurisdiction to hold that the common-law crime of assault can be committed by the intentional commission of an "unlawful act" without regard to whether that act is committed with intent to injure/touch offensively or intent to threaten.

7. Instructing a jury, as in *Johnson,* that it must find an "intentional assault" does not differentiate between intent to commit an act from which an inference of intent to injure or threaten *may* be drawn, and intent to injure or threaten. The instruction was not, therefore, "sufficient". The error in refusing to instruct in accordance with the law then extant cannot, on the facts, be said to have been harmless.

8. The Court is empowered to redefine common-law concepts although they are incorporated into a statute. However, it is one thing to hold that henceforth the creation of an apprehension of injury is sufficient to constitute the common-law crime of assault, a misdemeanor, and quite another to incorporate that definition into the felonious assault statute. Assimilating such a redefinition into a felony statute results in a substantial aggravation of the scheme of criminal penalties. The Legislature has indicated that punishment as a misdemeanor is all that is warranted for intentionally, without malice, pointing or aiming any firearm at or toward any other person, despite the dangers of inducing a breach of peace or causing apprehension which accompanies such actions. It is a question of public policy, one which the Legislature should decide, whether and to what extent the potentially severe penalties of the criminal law should be brought to bear on one who creates apprehension of injury without causing or intending to cause injury.

The Court should also address a question plainly implicated by its holding, that of the policy on instructions on lesser included offenses. The policy has been that a lesser offense instruction shall not be given where the charged offense can lead to a sentence of two or more years and the lesser to not more than one. The policy was recently revised with respect to larceny over and under $100, and a similar revision is now in order with respect to the lesser offense of intentionally pointing a gun and perhaps even simple assault.

9. Heretofore, when this Court has changed the definition of a criminal offense, it has applied its new ruling prospectively. Defendants Johnson and Ring, who committed acts before the *Sanford* decision and its dictum, are entitled to have their cases tried under the definition of the crimes of assault and felonious assault extant when their offenses were committed.

OPINION OF THE COURT

1. ASSAULT AND BATTERY — ELEMENTS OF CRIME.

A simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

2. ASSAULT AND BATTERY — INTENT — ELEMENTS OF CRIME.

The intent required for a simple criminal assault is either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery.

3. ASSAULT AND BATTERY — INTENT — FELONIOUS ASSAULT — ELEMENTS OF CRIME — INSTRUCTIONS TO JURY.

The jury in a prosecution for felonious assault must be adequately informed of the intent requirement, and must be instructed on the "reasonable apprehension of receiving an immediate battery" form of felonious assault as well as the "attempted battery" form (MCL 750.82; MSA 28.277).

4. ASSAULT AND BATTERY — INTENT — FELONIOUS ASSAULT — INSTRUCTIONS TO JURY.

The jury in a prosecution for felonious assault must be instructed that a defendant can be convicted if he intended to injure the victim or put him in reasonable apprehension of receiving an immediate battery (MCL 750.82; MSA 28.277).

OPINION BY WILLIAMS, J.

5. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INTENT.

*The crime of felonious assault does not include as an element a specific intent to inflict an injury on another (MCL 750.82; MSA 28.277).*

6. ASSAULT AND BATTERY — FELONIOUS ASSAULT — ELEMENTS OF CRIME — INTENT.

*Assault with a dangerous weapon (felonious assault) is a crime of general intent; the statute clearly requires only an assault which is with a dangerous weapon (MCL 750.82; MSA 28.277).*

7. ASSAULT AND BATTERY — STATUTES — LEGISLATIVE INTENT.

*The Legislature, in codifying the criminal law concerning assault, obviously intended to punish more severely those assaults accompanied by some degree of aggravation, e.g., serious injury, use of a dangerous weapon, or a specific intent to harm another (MCL 750.81 et seq.; MSA 28.276 et seq.).*

8. Assault and Battery — Elements of Crime — Intent.

   *Simple criminal assault is a crime of general intent; it is only necessary for the prosecution to show an intentional unlawful act (MCL 750.81; MSA 28.276).*

9. Assault and Battery — Felonious Assault — Intent — Evidence.

   *The intent element of felonious assault is shown by an intentional unlawful act (MCL 750.82; MSA 28.277).*

10. Assault and Battery — Felonious Assault — Intent — Weapons — Instructions to Jury.

    *An instruction to the jury which included the pertinent parts of the felonious assault statute and stated that the crime charged was "an intentional assault with a revolver, which is a dangerous weapon" was sufficient to apprise the jury of the elements of the crime (MCL 750.82; MSA 28.277).*

11. Assault and Battery — Felonious Assault — Intent — Instructions to Jury.

    *An instruction to the jury which made "intent to do bodily injury" a mandatory element of felonious assault is erroneous; the prosecution need only show the general intent which is required for simple assault, the commission of an unlawful act (MCL 750.81, 750.82; MSA 28.276, 28.277).*

Opinion by Ryan, J.

See headnote 15.

12. Assault and Battery — Words and Phrases.

    A simple criminal assault is either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery (MCL 750.81; MSA 28.276).

13. Assault and Battery — Intent — Fear — Weapons.

    *The belief or fear of the victim that the accused intended to fire a weapon at him does not govern upon the question of the intent or purpose of the accused under the assault and felonious assault statutes; however, it has not been held that the accused's intent or purpose to put the victim in reasonable apprehension of an immediate battery would not support a conviction of assault or felonious assault (MCL 750.81, 750.82; MSA 28.276, 28.277).*

14. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INSTRUCTIONS TO
JURY — INTENT.
Instructions to the jury in a trial for felonious assault should
include the alternative definitions of assault, i.e., an attempt to
commit a battery or an unlawful act which places another in
reasonable apprehension of receiving an immediate battery,
and also that there must be either an intent to injure or an
intent to put the victim in reasonable fear or apprehension of
an immediate battery (MCL 750.81, 750.82; MSA 28.276,
28.277).

OPINION BY LEVIN, J.

15. ASSAULT AND BATTERY — FELONIOUS ASSAULT — WEAPONS —
LEGISLATIVE INTENT.
The Legislature intended that felonious assault be the common-
law crime of assault committed with a dangerous weapon (MCL
750.82; MSA 28.277).

16. ASSAULT AND BATTERY — INTENT — ELEMENTS OF CRIME —
COMMON LAW.
*A specific or particular mental element (intent to injure) is
required for commission of the common-law offense of assault.*

17. ASSAULT AND BATTERY — FELONIOUS ASSAULT — ELEMENTS OF
CRIME — INTENT — COMMON LAW.
*The Legislature incorporates into felonious assault the mental
element of the common-law crime of assault when it uses the
term "assault"; failure to restate that mental element in the
statute does not eliminate it as an element (MCL 750.82; MSA
28.277).*

18. CRIMINAL LAW — INTENT — ELEMENTS OF CRIME — PENAL CODE
— COMMON LAW.
*There is generally an "intent to" element of common-law of-
fenses; one does not expect to find the requisite intent, or
indeed any element of a common-law offense, restated in the
penal code (although elements are sometimes stated), but looks
to the common law for a complete definition.*

19. ASSAULT AND BATTERY — INTENT — ELEMENTS OF CRIME —
COMMON LAW — STATUTES.
*The delineation of specific or particular intents in differentiating
the categorical assaults in the penal code evidences a legislative
purpose to provide differential penalties for different kinds of
assaults that otherwise would all entail the same penalty, not a
purpose to change the mental element of the undifferentiated*

offense of common-law assault (MCL 750.81 et seq.; MSA 28.276 et seq.).

20. ASSAULT AND BATTERY — FELONIOUS ASSAULT — WEAPONS — PUNISHMENT.

One can agree that the Legislature intended to punish more severely those assaults accompanied by some degree of aggravation, i.e., serious injury, use of a dangerous weapon, or a specific intent, without agreeing with the implication that the enlarged penalty may be imposed simply because a dangerous weapon was used (MCL 750.81 et seq.; MSA 28.276 et seq.).

21. ASSAULT AND BATTERY — ELEMENTS OF CRIME — COMMON LAW.

A criminal assault at common law was an attempt to commit a battery and that only.

22. CRIMINAL LAW — ATTEMPTS — INTENT.

An attempt to commit any crime requires a specific intent to commit that crime.

23. ASSAULT AND BATTERY — INTENT — FELONIOUS ASSAULT — ELEMENTS OF CRIME — WORDS AND PHRASES.

The word "assault" has one meaning in the common law, another meaning in tort law, and still other meanings in ordinary usage; a criminal assault involves an intent to cause bodily injury as an element of the offense and, hence, of felonious assault, and the offense is not made out by proof of the victim's apprehension of injury (MCL 750.81, 750.82; MSA 28.276, 28.277).

24. ASSAULT AND BATTERY — INTENT — WORDS AND PHRASES.

Creation of a reasonable fear of immediate injury is a necessary element of an assault in a civil case, but the word "assault" has a different meaning in the criminal law; as a consequence, dependence on a civil law definition gives little support to a statement on the intent required for the crime of assault (MCL 750.81; MSA 28.276).

25. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INTENT — COMMON LAW — OVERRULING DECISION.

The Supreme Court is obliged to give a better reason than that other jurisdictions are doing it for adoption of a new rule of law on the intent required for felonious assault which overrules a decision of the Court, nearly contemporaneous with the enactment of the felonious assault statute, which has guided the

*disposition of cases for more than half a century (MCL 750.82; MSA 28.277).*

26. CRIMINAL LAW — INTENT — SPECIFIC INTENT.

*Characterization of an offense as a general or specific intent crime, while important for some purposes, is at best a conclusion generally derived from the elements of the offense; it is therefore circular to decide what those elements are based on the conclusion that the offense is a general or specific intent crime.*

27. ASSAULT AND BATTERY — INTENT.

*There is no justification for requiring a lesser mental element for a criminal assault than for a tortious assault; the caselaw in those jurisdictions where at common law the crime of assault can be committed by menacing uniformly holds that an intention to create an apprehension of injury is an element of the offense, and it appears to be unprecedented to conclude otherwise (MCL 750.81, 750.82; MSA 28.276, 28.277).*

28. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INTENT — INSTRUCTIONS TO JURY.

*Instructing a jury on the crime of felonious assault that it must find an "intentional assault" does not differentiate between intent to commit an act from which an inference of intent to injure or to threaten may be drawn, and intent so to injure or threaten; the instruction was not, therefore, sufficient, and the error in refusing to instruct the jury on the existing law, on the facts that the defendant pointed a pistol at the complainant, ordered him not to move from the door of a motel room where the complainant was making a delivery, attempted to force open the door of the motel room while the complainant stood outside, and finally let the complainant go when the occupants of the motel room refused to open the door, cannot be said to have been harmless (MCL 750.82; MSA 28.277).*

29. COMMON LAW — STATUTES — SUPREME COURT.

*The Supreme Court is empowered to redefine common-law concepts although they are incorporated into a statute.*

30. ASSAULT AND BATTERY — INTENT — EVIDENCE — INFERENCES.

*The trier of fact must find an intent to injure to sustain a conviction of assault, although the defendant's intent may be inferred from evidence of threats accompanied by an unlawful condition and a show of force (MCL 750.81, 750.82; MSA 28.276, 28.277).*

31. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INTENT — EVIDENCE — WEAPONS.

The prosecutor is not required to prove that a defendant's gun was loaded to show his intent in a trial for felonious assault; the fact that the gun was unloaded, if that is the case, is a matter of defense (MCL 750.82; MSA 28.277).

32. ASSAULT AND BATTERY — FELONIOUS ASSAULT — INTENT.

The trier of fact may convict the defendant of assault or felonious assault when persuaded that the defendant intended to injure the complainant unless he complied with an unlawful condition stated by the defendant with a showing of the proscribed kind of force, and acquit when persuaded that no injury was intended and that the threat, albeit frightening to the complainant, was idle (MCL 750.81, 750.82; MSA 28.276, 28.277).

33. ASSAULT AND BATTERY — WEAPONS — PUBLIC POLICY.

Tort law seeks to provide compensation to a person wronged by having a gun pointed at him, without regard to whether injury was intended; it is a different question of public policy, however, which the Legislature should decide, whether and to what extent the potentially severe penalties of the criminal law should be brought to bear.

34. ASSAULT AND BATTERY — FELONIOUS ASSAULT — COMMON LAW — PROSPECTIVE APPLICATION.

Heretofore when the Supreme Court has changed the definition of a criminal offense, it has applied its ruling prospectively; a defendant charged with felonious assault is entitled to have his case tried under the common-law definition of the crime of assault and felonious assault extant when the offense was committed (MCL 750.81, 750.82; MSA 28.276, 28.277).

35. CRIMINAL LAW — COMMON LAW — PROSPECTIVE APPLICATION.

Application of a change in the common-law definition of a crime by judicial decision without the aid of statute to the defendant in the case announcing the change does not violate the constitutional bar against ex post facto laws because that bar is directed to the legislative body, but it clearly violates the underlying principle that no one should be punished for doing what had not been defined as a crime at the time it was done (US Const, art 1, §§ 9, 10; Const 1963, art 1, § 10).

36. COMMON LAW — SUPREME COURT — OPINIONS — HOLDING OF THE CASE — CONCURRING IN RESULT.

A Justice who agrees with the result or disposition of a case has not adopted the reasoning or dictum of an opinion; he is, of

*course, free to state later that he adopts the reasoning or dictum, but such a later agreement cannot have retroactive ' effect on the law.*

37. COMMON LAW — WORDS AND PHRASES — OBSERVATION — DICTUM.
   *An "observation" by the Court is, by definition, nothing more than dictum; dictum "clarifying" dictum is still dictum.*

38. CRIMINAL LAW — COMMON LAW — RETROACTIVE APPLICATION.
   *It is fundamentally wrong to apply a new rule of substantive law, making menacing assault a crime, retroactively to an act done before the Supreme Court declares for the first time in an opinion signed by four Justices that the new rule is to be the law of Michigan.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General.

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people in *Johnson.*

*David H. Sawyer,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people in *Ring.*

State Appellate Defender (by *Kathleen M. Cummins)* for defendant Johnson.

*Varnum, Riddering, Wierengo & Christenson* (by *Dennis C. Kolenda)* for defendant Ring.

MEMORANDUM OPINION. These consolidated cases, arising out of prosecutions for felonious assault, concern jury instructions on the mental element of the common-law offense of assault and the statutory offense of felonious assault.

The people's proofs at trial in *Johnson* and at the preliminary examination in *Ring* tended to show that in each case the defendant pointed a

gun at the complainant but no shot was fired. The defendants claim that they had no intention to injure and that the jury must be instructed that it may not convict unless it finds such intent. The instruction was refused in *Johnson;* before trial in *Ring* the judge agreed to so instruct.

A majority of the Justices are of the opinion that

1) a simple criminal assault "is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery", *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978),

2) the jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery,

3) the instruction in *Johnson* was deficient in two respects: it failed adequately to inform the jury of the intent requirement and it neglected to present the alternative "reasonable apprehension of receiving an immediate battery" form of felonious assault; the jurors in *Ring* should be instructed that defendant can be convicted if he intended to injure the victim or put him in reasonable apprehension of receiving an immediate battery.

We reverse *Johnson* and remand for a new trial and affirm the trial court's decision in *Ring* as modified and remand for trial.

*Johnson* did not raise an intoxication defense and the question whether assault or felonious assault are specific intent crimes for the purpose of the voluntary intoxication defense is not raised by the facts and has not been briefed or argued and is not before us; we intimate no opinion on that question.

This memorandum opinion is signed by seven Justices. There are separate concurring and dissenting opinions. However, at least four Justices concur in every holding, statement and disposition of this memorandum opinion.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

WILLIAMS, J. Leave to appeal was granted in these cases to consider a single question: "whether felonious assault includes a specific intent as an element." MCL 750.82; MSA 28.277. 402 Mich 855 (1978).

We granted leave because the precedents in this Court do not give a clear answer to the question and, until recently, the same situation prevailed in the Court of Appeals.

Our answer is that *specific* intent is not an element in MCL 750.82; MSA 28.277:

> "Felonious assault—Any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony."

We hold specific intent is not an element for these reasons:

(1) There is no specific intent written into the section while two forms of specific intent are particularly excluded from the section.

(2) MCL 750.82; MSA 28.277 is one of a number of assault sections in Chapter XI of the penal code. MCL 750.82; MSA 28.277 does not particularly

define a specific intent, whereas most of the others do.

(3) The structure and history of MCL 750.82; MSA 28.277 demonstrate that this section entitled felonious assault should more properly be called assault with a dangerous weapon. It is just that, a simple assault aggravated by the use of a dangerous weapon. The only intent necessary is the general intent necessary for an assault.

(4) The controlling case law, *People v Burk,* 238 Mich 485; 213 NW 717 (1927); *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978); *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), holds that specific intent is not an element of felonious assault.

In *People v Johnson* the trial court refused to give a separate instruction on criminal intent for felonious assault, but did instruct that the prosecution must prove an intentional assault. The Court of Appeals affirmed. We affirm the Court of Appeals in *People v Johnson.*

In *People v Ring* the trial court agreed to instruct the jury that the "intent to do bodily injury" was a necessary element of felonious assault. The Court of Appeals denied leave to appeal. We reverse the decision of the trial court to give the "intent to do bodily injury" instruction and remand for instructions consistent with this opinion.

## I. Facts

### A. *People v Johnson*

On June 1, 1974, at about 3 a.m. complainant, Ramone Jefferson, delivered a pizza to a motel room in Highland Park. He received a ten-dollar bill in payment from his customers and returned to his automobile for change. When complainant

returned he was met outside the motel room by defendant Joeseype Johnson, who pointed a pistol at him and ordered him not to move. The customers slammed the door. While pointing the gun at Jefferson, Johnson attempted to force the door open. This went on for about ten minutes. Defendant then told Jefferson to "stay right there". Complainant remained in front of the motel room while Johnson walked out to a nearby terrace. When Johnson returned he again attempted to gain entrance to the motel room. When the customers refused to open the door, defendant told complainant that he could go.

Complainant went immediately to the manager's office and reported the incident. After leaving the manager's office the complainant saw Johnson walking toward his (complainant's) car. Complainant then returned to the manager's office. After a few minutes Johnson entered the manager's office, pulled up his shirt, indicating that he did not have a pistol and said, "See, I'm legal now." Jefferson left, drove to a police station and reported the incident. He returned to the manager's office with a police officer. Johnson was still standing in the manager's office. The complainant identified Johnson and Johnson was promptly arrested.

Defendant was charged with felonious assault, a violation of MCL 750.82; MSA 28.277. At trial, defense counsel requested "a separate instruction on criminal intent". The trial judge stated that *People v Clark,* 48 Mich App 645; 210 NW2d 906 (1973), "indicated that specific intent is not an element of crime—of felonious assault. * * * '[T]he only elements necessary to prove and sustain a conviction of felonious assault are assault and that a dangerous weapon was used in making the assault.'"

The judge gave the following instruction on felonious assault:

"In this case, the defendant is charged with an offense which is commonly known as felonious assault; the statute from which the information is drawn, so far as the same [is] material provides as follows: any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon but without intending to commit the crime of murder and without intending to commit great bodily harm less than murder shall be deemed guilty of a felony. An assault is an attempt or offer with force and violence to harm another.          .

"If you are satisfied from the testimony that Mr. Johnson committed an intentional assault with a revolver which is a dangerous weapon likely to produce great bodily injury or is one more accurately described in the manner in which it is attempted to be used to commit great bodily harm."

The Court of Appeals affirmed defendant's conviction on March 10, 1976 in an unpublished per curiam opinion (Docket No. 22311). We granted leave to appeal January 20, 1978, 402 Mich 855 (1978), "limited to the following issue: whether felonious assault includes a specific intent as an element."

B. *People v Ring*

On the morning of March 7, 1977, a roofing company's work crew was temporarily blocking traffic while backing a truck into a driveway. One of the company's employees, Tom Heney, was directing traffic around the truck. Defendant David Ring approached the stopped traffic.

The testimony presented at the preliminary examination offers two interpretations of the events that followed. Defendant testified that he stopped and was directed around the truck by Heney.

While passing the truck, defendant heard a loud thud coming from the side of his automobile. He stopped and got out of his car. The person direct-. ing traffic was very angry with defendant and made obscene gestures and comments. Defendant got back in his car and left.

Members of the working crew presented a different version of the incident. They testified that defendant ignored the signal to stop, wove in and out of traffic and forced his way through the bottleneck, nearly striking Heney. The truck was subsequently parked off the street. About 20 minutes later the company personnel noticed defendant's automobile returning and came down from the roof to obtain his license-plate number. Defendant stopped on the street. Complainant, Roger VorenKamp, was the first to reach the street. He approached defendant's automobile. Defendant and VorenKamp exchanged words. Ring then produced a pistol from the seat beside him and pointed it at VorenKamp and then sped away. The employees noted defendant's license-plate number and called the police.

Defendant testified he returned to the work site to get the truck license number and that the complainant, carrying his roofing tools, approached within a foot or two of defendant's car and shouted loud and obscene comments at defendant. When complainant told defendant to pull into the driveway so that the matter could be settled, defendant picked up a toy pistol from the front seat of his automobile and pointed it at the complainant. Complainant left immediately and defendant drove off.

The police traced the vehicle registration supplied by the work crew to defendant and attempted to find him. Subsequently defendant went

to police headquarters of his own volition. He acknowledged the confrontation with VorenKamp but claimed that it was only a toy pistol he had used. Ring handed the police a plastic pistol. The officer showed the toy gun to VorenKamp who stated that it was not the gun which defendant had pointed at him. The police checked the pistol safety inspection records and found that defendant had presented a .38-caliber revolver for safety inspection on June 21, 1976. They confiscated this weapon. The complainant was unable to identify the confiscated gun as the one pointed at him. About five weeks later defendant was charged with assault with a dangerous weapon, MCL 750.82; MSA 28.277.

Prior to trial defendant requested a jury instruction on the elements of assault with a dangerous weapon.

Defendant's Proposed Instruction "A" reads:

"The defendant, David Ring, is charged with the crime of assault with a dangerous weapon. This crime is very often referred to as felonious assault.

"To establish the crime of felonious assault and to establish David Ring's guilt of that crime, the prosecution must prove all three of the following elements beyond a reasonable doubt:

"(1) That David Ring deliberately pointed a dangerous weapon at the complainant;

"(2) That, when he did so, if he did so, David Ring intended to do bodily harm to complainant although harm less than murder and less than great bodily harm, and

"(3) That David Ring acted without excuse or justification.

*    *    *

"The second necessary element is intent to do bodily harm. Intent is a decision of the mind to knowingly do an act with a conscious and fully formed [objective] of

accomplishing a certain result. The intent with which a person does an act is known by the way he expresses it or by the way he indicates it by his conduct. When certain intent is a necessary element of a crime, that crime cannot have been committed if the intent did not exist. Accordingly, there can be no crime of felonious assault where there is no intent to do bodily harm."

The trial court found,

"It is hereby ordered that defendant's Proposed Instruction 'A' be given, this court having ruled that, contrary to the Michigan Criminal Jury Instructions and Commentary with respect to the crime of felonious assault, specific intent to do bodily injury to the complainant is an element of the crime of felonious assault which the people must prove beyond a reasonable doubt."

The prosecution filed an application for leave to appeal the decision requiring the giving of the requested instruction, with the Court of Appeals. The application was denied September 30, 1977 (Docket No. 77-3295). The prosecution then filed an application for leave to appeal with the Supreme Court. We granted leave to appeal January 20, 1978, 402 Mich 855 (1978), "limited to the following issue: whether felonious assault includes a specific intent as an element".

## II. No Specific Intent in MCL 750.82; MSA 28.277

MCL 750.82; MSA 28.277 states:

"Any person who shall *assault* another *with a* gun, revolver, pistol, knife, iron bar, club, brass knuckles or other *dangerous weapon,* but without intending to commit the crime of murder, and without intending to

inflict great bodily harm less than the crime of murder, shall be guilty of a felony." (Emphasis added.)

The statutory language does not require any specific intent, it simply requires an assault with a dangerous weapon. In fact the language negates the requirement of two types of specific intent, *i.e.,* intent to commit murder and intent to inflict great bodily harm less than murder. Consequently, the wording of the statute cannot support the allegation that a specific intent is an element of felonious assault. The only intent necessary is the general intent to do acts involved in the assault. The statute is clear in requiring only an assault and with a dangerous weapon.

Generally assault with a dangerous weapon is interpreted as a general intent crime.

"No specific intent is necessary to constitute the crime, other than such as may be embraced in the act of making an assault with a dangerous weapon. This embraces simply the intentional and unlawful use of a dangerous weapon, by means of which an assault is committed with such weapon upon the person of another." 1 Anderson, Wharton's Criminal Law and Procedure (1957 ed), § 361, p 720.

### III. OTHER ASSAULT SECTIONS HAVE PARTICULAR REFERENCE TO SPECIFIC INTENT

"Chapter XI. Assaults" of the penal code, MCL 750.81 *et seq.;* MSA 28.276 *et seq.,* derives from 1931 PA 328, which in turn was based on prior enactments. "Chapter XI. Assaults" lists a series of assaults punishable as either misdemeanors or felonies depending on the severity of the offense.

The points of importance to the issue in the instant case are: first, felonious assault is but one of a number of assault offenses listed in successive

sections of 1931 PA 328, and second, the language of the felonious assault section does not include a specific intent to harm another either in the catchline title or in the text setting forth the offense and punishment, whereas a number of the other sections deal with assault offenses where the intent to harm another is specifically set forth in both the catchline title and in the text of the offense.

The assault offenses listed in "Chapter XI. Assaults" follow:

1. assault and assault and battery, 1931 PA 328; MCL 750.81; MSA 28.276

2. assault and infliction of serious injury, 1931 PA 328, as added by 1939 PA 237; MCL 750.81a; MSA 28.276(1)

3. felonious assault, 1931 PA 328; MCL 750.82; MSA 28.277

4. assault *with intent* to commit murder, 1931 PA 328; MCL 750.83; MSA 28.278

5. assault *with intent* to do great bodily harm less than murder, 1931 PA 328; MCL 750.84; MSA 28.279

6. assault *with intent* to maim, 1931 PA 328; MCL 750.86; MSA 28.281

7. assault *with intent* to commit felony not otherwise punished, 1931 PA 328; MCL 750.87; MSA 28.282

8. assault *with intent* to rob and steal being unarmed, 1931 PA 328; MCL 750.88; MSA 28.283

9. assault *with intent* to rob and steal being armed, 1931 PA 328, as amended by 1939 PA 94; MCL 750.89; MSA 28.284.

The sections which require a specific intent list the intent as an element, for example assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279:

"Assault with intent to do great bodily harm less than murder—Any person who shall assault another with *intent to do great bodily harm, less than the crime of murder,* shall be guilty of a felony punishable by imprisonment in the state prison not more than 10 years, or by fine of not more than 5,000 dollars." (Emphasis added.)

This is to be compared with the felonious assault section, which reads as follows:

"Any person who shall *assault* another *with a* gun, revolver, pistol, knife, iron bar, club, brass knuckles or other *dangerous weapon,* but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony." (Emphasis added.)

Comparison of those sections of "Chapter XI. Assaults" which specifically set forth the requirement of a specific intent to harm another with the felonious assault section demonstrates two points. First, the Legislature demonstrates beyond peradventure that when it intends a particular offense to require a specific intent, it knows how to, and does, require that specific intent. Second, the Legislature demonstrates that in the case of felonious assault it does not intend to require a specific intent. As a consequence, this Court should follow the legislative intent and not require a specific intent for felonious assault.

IV. MCL 750.82; MSA 28.277 Is Only Simple Assault Plus a Dangerous Weapon

At common law assault and battery were misdemeanors. When codifying the criminal law, the Legislature created a series of more serious or "aggravated" offenses which did not exist as sepa-

rate crimes at common law. Although based partly on common-law crimes of assault and battery, some of the aggravated offenses are now felonies.

"Although the common law created the twin crimes (misdemeanors) of assault and battery, in modern times legislatures everywhere have added the more serious crimes (felonies) of aggravated assaults and batteries *(e.g.,* assault, battery with intent to kill, rob, rape; assault, battery with a dangerous weapon)." LaFave & Scott, Criminal Law, § 80, p 603.

The 1931 codification, The Michigan Penal Code, contains Chapter XI which lists "aggravated" assaults. It has remained essentially unchanged to this day.

The basis of the offenses listed in Chapter XI is an assault; this is evident from the catchlines and text of the particular sections. The obvious intent of the Legislature is to punish more severely those assaults accompanied by some degree of aggravation, *e.g.,* serious injury, use of a dangerous weapon or a specific intent. Therefore, the basic assault must be established, accompanied by the aggravating circumstances to meet requirements of the particular sections.

MCL 750.82; MSA 28.277 requires an "assault * * * with a * * * dangerous weapon", in other words an assault aggravated by the use of a dangerous weapon. In *People v Goolsby,* 284 Mich 375; 279 NW 867 (1938), a prosecution for felonious assault with an automobile, the Court said:

"Construction or interpretation of a penal statute requires consideration of the evil sought to be penalized. The evil, under legislative consideration, was that of assaults, aggravated by use of dangerous weapons." 284 Mich 375, 379.

This analysis of the legislative concerns demonstrates that the elements of felonious assault are (1) an assault and (2) employment of a dangerous weapon.

In *Burk, supra,* this Court again listed the elements of felonious assault as "an assault with a dangerous weapon" without the intent to murder or the intent to do great bodily harm less than murder. The Court said, "If defendant assaulted Foster with a dangerous weapon he would be guilty of the offense charged, regardless of his intent to injure him." 238 Mich 485, 489.

We conclude that felonious assault is, as the statute states, assault with a dangerous weapon. There is no support for the allegation that the offense requires more than those elements.

Simple criminal assault is acknowledged as a general intent crime.[1] In other words, it is only necessary to show an intent to commit an unlawful act to satisfy the intent element of simple assault. Since felonious assault is assault with a dangerous weapon, the intent element of felonious assault is shown by the same type of act, *i.e.,* an intentional unlawful act. There is no specific intent necessary for felonious assault, only the general intent needed for simple assault.

## V. PRESENT CASE LAW

There are four critical cases to consider in reviewing the position of this Court on the question "whether felonious assault includes a specific intent as an element". They are chronologically:

---

[1] This is acknowledged in relation to the intoxication defense. Generally intoxication is a defense only in specific intent crimes. In this context, it has been found that the defense is not available to one charged with simple assault, *People v Comstock,* 115 Mich 305, 312; 73 NW 245 (1897).

*People v Doud,* 223 Mich 120; 193 NW 884 (1923); *People v Burk,* 238 Mich 485; 213 NW 717 (1927); *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947); *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978).

*Doud* and the subsequent *Burk* both considered the giving or not giving of a specific intent charge. *Doud* required it, but the later *Burk* ruled it was neither required nor appropriate. *Counts* indirectly considered felonious assault a specific intent crime by holding evidence of intoxication was admissible to negate the required intent. *Sanford,* the most recent case, in considering the definition of criminal assault which is the basis of felonious assault ruled that " 'a simple criminal assault "is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery" ' ", 402 Mich 460, 479. The significance of this holding, obviously, is that the second kind of criminal assault focuses on whether the assaultee was by defendant's acts put "in reasonable apprehension of receiving an immediate battery", and, if he was, it would be immaterial whether or not the defendant intended to do bodily injury to the assaultee.

*Doud* is a particularly interesting case in light of both *Burk* and *Sanford* as we shall develop. The critical facts in *Doud* were that Doud confronted men trying to put up a boundary fence, on what Doud claimed was his property, by ordering them off and showing his revolver. The case report continues:

"At the trial defendant was permitted to testify fully as to his intent and claimed he entertained no purpose to inflict injury. Even though such claim was refuted by his acts, demeanor and words, defendant had a right to

go to the jury with what he claimed to have been his purpose. The trial judge gave the jury no instruction upon the issue of defendant's intent, although requested to do so, but charged:

" 'The people say that he pointed the gun at Davenport; and the people say that he pointed the gun under such circumstances as imported an intent to fire his gun off. The people do not say that he did intend to (it is not necessary that they should say it or prove it), but if he pointed a gun under such circumstances that Davenport had reasonable grounds to believe that he intended to fire it off, and it was pointed at Davenport at the time, then he is guilty of the offense charged.'

"While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, is mentioned in some of the books as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused under this statute. We think defendant was entitled to have the following portion of his sixth request to charge given:

" 'As to what his intention actually was you must determine that, if you are able to, from the evidence in the case, considering what he did, what he said, and what he testifies to as his intent.'" 223 Mich 120, 124-125.

This Court reversed and granted a new trial.

In *Burk*, the defendant, as in *Doud*, was convicted of felonious assault and had requested a charge including "[t]o convict the defendant, you must find that * * * [defendant] did intend to inflict bodily harm upon him". This Court replied, "We think the instruction asked is objectionable in that it assumed that intent was a necessary element of the offense charged. * * * If defendant assaulted Foster with a dangerous weapon he would be guilty of the offense charged, regardless of his intent to injure him * * *", 238 Mich 485, 489. The conviction was affirmed.

*Burk* did not specifically overrule *Doud.* In fact, it did not even refer to it. But the *Burk* rule is diametrically opposite the *Doud* rule on the necessity of charging specific intent, so *Burk* supersedes *Doud* on that point.

But the trial court charge in *Doud* is interesting from another point of view. The charge states in part:

"if he pointed the gun under such circumstances that Davenport [the assaultee] had reasonable grounds to believe that he intended to fire it off, and it was pointed at Davenport at that time, then he is guilty of the offense charged." 223 Mich 120, 124-125.

This charge anticipates the ruling in *Sanford* — " 'a simple criminal assault "is made out from * * * an unlawful act which places another in reasonable apprehension of receiving an immediate battery" ' ", 402 Mich 460, 479.

As quoted above, this Court in *Doud* said:

"While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, is mentioned in some of the books as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused under this statute." 223 Mich 120, 125.

As a consequence, it must be recognized that the rule of law as stated by this Court in *Doud* as to an assault not existing if the victim is merely put in reasonable fear or apprehension of what the defendant is doing has changed, too, and *Doud* is overruled here also.

This leaves only *Counts* out of line with the rule that specific intent is not an element of felonious assault. It is true that this Court in that case said:

"The offense charged in the information, as well as the lesser and included offense of which defendant was convicted [felonious assault], involved a specific intent as an essential element. Presumably the testimony indicating that defendant had been drinking was offered for such bearing as it might legitimately have on defendant's mental condition, and on the reason or reasons for his conduct as disclosed by the testimony of the various witnesses in the case." 318 Mich 45, 47-48.

However, the opinion does not indicate that the issue whether specific intent is an element of felonious attempt was a direct issue in that case. Even if it were, at this point, we hold that the *Burk-Sanford* precedent supersedes.

As supporting this conclusion, it is of interest that the Court of Appeals, beginning with *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), has followed the rule of *Burk.* The Court of Appeals in *Johnson* said:

"By the clear language of the [felonious assault] statute the crime is merely a simple assault committed with a dangerous weapon. While the statute specifically excludes certain types of specific intent, the only intent that would appear to be required is the intent necessary to constitute a simple assault.

\* \* \*

"Since assault and battery is not a specific intent crime that is excused by voluntary drunkenness, and felonious assault as defined by MCL 750.82, *supra,* is but an assault committed with a dangerous weapon, felonious assault is not a specific intent crime to which the defense of voluntary intoxication is available." 42 Mich App 544, 546-547.

In addition, it is noteworthy that the proposed Michigan Criminal Jury Instructions follow the *Burk* rule, CJI 17:4:01.

## VI. APPLICATION TO *JOHNSON* AND *RING*

### A. *People v Johnson*

The instruction given by the trial court informed the jury of the elements of felonious assault in two ways. First the pertinent parts of the statute were read to the jury:

"[T]he statute from which the information is drawn, so far as the same [is] material provides as follows: any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon but without intending to commit the crime of murder and without intending to commit great bodily harm less than murder shall be deemed guilty of a felony."

Second, the jury was also told:

"If you are satisfied from the testimony that Mr. Johnson committed an intentional assault with a revolver which is a dangerous weapon."

We find this instruction was sufficient to apprise the jury of the elements necessary for felonious assault, *i.e.,* one, an assault; two, with a dangerous weapon.

### B. *People v Ring*

The instruction that the trial court had agreed to give is in error. It requires an "intent to do bodily injury" as a mandatory element of felonious assault. A specific intent is not an element of felonious assault. The prosecution need only show the general criminal intent to commit an unlawful act necessary for simple assault.

## VII. Conclusion

We granted leave to appeal in these cases to determine whether felonious assault includes specific intent as an element. We conclude that specific intent is not an element of felonious assault.

Therefore, the instruction given by the trial court in *Johnson* defining intentional assault as an element of ·felonious assault was sufficient. We affirm the Court of Appeals in *Johnson.*

However, the instruction the trial court has agreed to give in *Ring* requiring an intent to injure is erroneous. We reverse the trial court's decision to give that instruction and remand for instructions consistent with this opinion.

COLEMAN, C.J., and BLAIR MOODY, JR., J., concurred with WILLIAMS, J.

RYAN, J. We agree with Justice LEVIN's reasoning in disposing of the only issue upon which leave to appeal was granted in this case—whether felonious assault includes specific intent to do bodily harm as an element.

We disagree, however, with Justice LEVIN's reading of this Court's opinion in *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), regarding the definition of criminal assault and his conclusion that in Michigan unlawfully putting another in reasonable apprehension of injury is not a crime. In *Sanford,* four members of the presently seated Court adopted the reasoning and accepted the conclusion of Justice WILLIAMS that a simple criminal assault "is made out from either an attempt

to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery".[1] 402 Mich 460, 479.

That was not this Court's first pronouncement on the matter. This Court said as much in *People v Carlson,* 160 Mich 426; 125 NW 361 (1910).

In contrast to my brother's suggestion that in *Sanford* Justice WILLIAMS adopted a definition of criminal assault different from that which was noted in *Carlson,* we read *Sanford* as merely clarifying and restating the *Carlson* observation that there are two kinds of criminal assault—attempted battery and putting in fear.

In *Carlson,* admittedly with something less than model clarity, this Court stated that there are two definitions of criminal assault which, "taken together, may be said to include all necessary elements":

" 'An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect.' 3 Cyc, p 1020."

" 'An assault is any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate injury to a human being.' 2 Bishop on Criminal Law (7th ed), § 23." 160 Mich 426, 429.

In *Sanford,* while quoting the definitions of criminal assault as they were stated in Perkins on Criminal Law (2d ed), p 117, we noted that *Carlson* acknowledged the existence of at least two forms of criminal assault:

---

[1] Justice WILLIAMS' opinion was signed by Chief Justice COLEMAN and Justice MOODY. In a separate opinion Justice FITZGERALD and I concurred in the result reached by Justice WILLIAMS and the disposition of the assault issue.

"We also hold that either the Cyclopedia or the Bishop definition in *Carlson* is an adequate definition of a form of assault and that both forms are actionable in the criminal laws." *Sanford, supra,* 479.[2]

My brother further suggests that even conceding *arguendo* that *Carlson* established the existence of the two forms of criminal assault here in question, the viability of the two definitions set forth there was undermined by this Court's intervening decision in *People v Doud,* 223 Mich 120, 125; 193 NW 884 (1923), and that in *Doud* the Court held that felonious assault cannot be established by proof of conduct putting another in apprehension of injury. He concludes, therefrom, that defendants Ring and Johnson, who were charged with pre-*Sanford* misconduct, cannot be convicted of the menacing type of criminal assault of which the *Carlson* and *Sanford* opinions spoke.

We disagree.

The Court in *Doud* was concerned only with the correctness of the challenged jury instructions which shifted the inquiry away from the intent of the defendant and focused instead upon the belief or fear of the victim that the defendant intended to fire a weapon at him.[3] That Court properly

---

[2] The Court of Appeals in *Sanford* had misinterpreted the *Carlson* definition in the conjunctive to include a requirement that "the victim be put in reasonable fear of immediate harm" before a conviction of criminal assault would lie. We concluded that they had been framed in the disjunctive and that either definition could stand alone. See *Sanford, supra,* 475, citing *People v Sanford,* 65 Mich App 101, 105; 237 NW2d 201 (1975).

[3] "At the trial defendant was permitted to testify fully as to his intent and claimed he entertained no purpose to inflict injury. Even though such claim was refuted by his acts, demeanor and words, defendant had a right to go to the jury with what he claimed to have been his purpose. The trial judge gave the jury no instruction upon the issue of defendant's intent, although requested to do so, but charged:

" 'The people say that he pointed the gun at Davenport; and the people say that he pointed the gun under such circumstances as

concluded that "we do not understand that such fear *governs* upon the question of the intent or purpose of an accused under this statute". 223 Mich 120, 125. (Emphasis added.) The *Doud* Court did not say that the *accused's* intent or purpose to put the victim in reasonable apprehension of an immediate battery would not support an assault conviction.[4]

The jury in *Johnson* was instructed that the defendant could be convicted if he attempted to injure the victim and the assault was "intentional", but there was no instruction that defendant may alternatively be convicted of intentionally putting the victim in reasonable fear or appre-

imported an intent to fire his gun off. The people do not say that he did intend to (it is not necessary that they should say it or prove it), but if he pointed a gun under such circumstances that Davenport had reasonable grounds to believe that he intended to fire it off, and it was pointed at Davenport at the time, then he is guilty of the offense charged.'

"While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, is mentioned in some of the books as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused under this statute. We think defendant was entitled to have the following portion of his sixth request to charge given:

" 'As to what his intention actually was you must determine that, if you are able to, from the evidence in the case, considering what he did, what he said, and what he testifies to as his intent.' " *Doud, supra,* 124-125.

[4] In *Doud,* the defendant requested that the jury be instructed that:

"Applying this definition to the facts in this case, I instruct you that pointing a loaded gun at another within shooting distance, if the person pointing the gun intends to discharge it, is an assault. But it is not an assault to point a loaded gun at another if there is no intention to do bodily harm."

The trial judge denied defendant's request. On appeal, the defendant claimed that the failure to give his requested instruction was a reversible error (see Michigan Supreme Court Records and Briefs [112-128 April Term, 1923], Docket No 121, Appellant's Brief, p 8), but this Court did not refer to this requested instruction or hold that the failure to give it was reversible error. Accordingly, we conclude that *Doud* did not hold that an intent to injure or batter is required in every criminal assault case.

hension of an immediate injury. The instruction was deficient in two respects: it failed adequately to inform the jury of the specific intent requirement and it neglected to present the alternative form of felonious assault.

The jurors in *Ring* should be instructed that defendant could be convicted if he specifically intended to injure the victim, but they were not to be instructed on the alternative form of assault— the intent to put the victim in apprehension of an immediate battery. The jury should be instructed on both forms of felonious assault.

In summary, the juries in each of the cases before us should be instructed on the definitions of assault outlined in *Sanford,* along with a specific intent instruction that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery.

We would reverse *Johnson* and remand for a new trial and affirm the trial court's decision in *Ring* as modified and remand for trial.

FITZGERALD, J., concurred with RYAN, J.

LEVIN, J. (This dissenting opinion was written in response to the lead opinion written by Justice WILLIAMS. Part IX was subsequently added in response to the concurring opinion written by Justice RYAN. Part X was added in response to the memorandum opinion.)

These consolidated cases, arising out of prosecutions for felonious assault, concern jury instructions on the mental element of the common-law offense of assault and the statutory offense of felonious assault.

The people's proofs at trial in *Johnson* and at

the preliminary examination in *Ring* tended to
show that in each case the defendant pointed a
gun at the complainant but no shot was fired.[1] The
defendants do not claim that there was insufficient
evidence to support a finding of intent to injure
but, rather, that they had no such intention and
that the jury must be instructed that it may not
convict unless it finds such intent. The instruction
was refused in *Johnson;* before trial in *Ring* the
judge agreed to so instruct. The people contend
that intent to injure is not an element of assault
or felonious assault and that a jury may convict if
it finds that the defendant created apprehension of
injury.

The issue, as framed by the orders granting
leave to appeal, is "whether felonious assault in-
cludes a specific intent as an element".

## A

The lead opinion declares that i) felonious as-

[1] In *Johnson* the complainant, who was delivering pizza to a motel
room, was met outside by the defendant. Defendant pointed a pistol at
the complainant and ordered him not to move. While pointing the
gun at complainant defendant attempted to force open the door to the
room. This went on for about ten minutes. Defendant then told
complainant to "stay right there". Complainant remained in front of
the room while defendant walked out to a nearby terrace. When
defendant returned he again attempted to gain entrance to the room.
When the occupants refused to open the door, defendant told com-
plainant that he could go. These facts were undisputed at trial;
defendant did not testify.

In *Ring,* while there was some dispute at the preliminary examina-
tion regarding the facts, particularly with respect to whether the
defendant pointed a toy or real gun at the complainant, the presiding
judge was "satisfied the proof is shown, by rather clear and convinc-
ing testimony of the young man who doesn't know anything about
guns here, Mr. VorenKamp, that this was a real gun, which he found
pointed at him, and which caused him to leave the scene very
hurriedly". Complainant had testified at the preliminary examination
that defendant had pointed the gun at him and said he would do the
talking. A police officer testified that defendant had told him that he
had pointed a toy gun at complainant and stated, "[d]on't come any
closer. Better leave me and my car alone, or else".

sault is common-law assault with the added element of use of a dangerous weapon, ii) common-law assault is a general, not specific, intent crime, iii) intent to injure is not an element of assault or felonious assault, iv) an assault may be committed by creating a reasonable apprehension of injury (menacing), and v) it was "sufficient" in *Johnson* to instruct that an element of felonious assault was an "intentional assault".

The lead opinion rests its conclusion that intent to injure is not a necessary element of assault and felonious assault and that those offenses can be committed by menacing, although there is no intent to injure, on a statutory analysis and an analysis of the Michigan case law:

1) "[N]o specific intent [is] written into the [felonious assault] section while two forms of specific intent are particularly excluded", and most other assault sections "particularly define a specific intent". "[T]his Court should follow the legislative intent and not require a specific intent for felonious assault."

2) Under the statute, "[t]he only intent necessary is the general intent ["to commit an unlawful act"] necessary for an assault". The "controlling case law, *People v Burk,* 238 Mich 485; 213 NW 717 (1927); *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978); *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), holds that specific intent is not an element of felonious assault".

### B

We agree with the lead opinion that the elements of felonious assault are i) those of the common-law crime of assault, and ii) the added

element that the assault is committed with a dangerous weapon. Our disagreement concerns the elements of common-law assault.

We dissent because

1) Although the Legislature's intent is controlling, since we are in agreement that it intended that felonious assault be common-law assault committed with a dangerous weapon, the meritorious constructional issue turns solely on the elements of the common-law offense.

The question presented is whether the definition of the common-law crime of assault has been or should be judicially expanded in Michigan to include menacing without intent to injure.

2) At common law, the *crime* of assault was an attempted battery. A necessary element of all attempts is an intention to commit another offense. An element of the other offense here, battery, is a touching, either injurious or offensive. Hence an element of the crime of assault at common law was an intention to touch either injuriously or offensively.

3) A necessary element of the tort of *civil* assault is reasonable apprehension of injury. Those jurisdictions which have expanded by judicial decision the definition of the crime of assault to include menacing (creating apprehension of injury) have generally done so without recognizing the distinction at common law between civil and criminal assaults. In Michigan, however, that distinction heretofore has been preserved.

4) This Court, when first construing the felonious assault statute in *People v Doud,* 223 Mich 120; 193 NW 884 (1923), upon full consideration of case law in this and other jurisdictions on the question whether an assault can be committed by menacing (creating apprehension of injury), con-

cluded that the defendant's intention was control-
ling and that the jury must be instructed that it
cannot convict unless it concludes that the defen-
dant intended "to do an injury" ("inflict a corporal
hurt"), and that menacing without intent to injure
does not make out the offense.

5) Neither *Burk* nor the lead opinion in *Sanford*
speaks at all of "specific intent".

Neither opinion even adverts to *Doud's* holding
that menacing is not assault; no party in either
case contended that *Doud* was incorrectly decided
or sought its overruling. The question whether the
crime of assault can be committed by menacing,
decided in *Doud,* was not presented, argued or
discussed in *Burk,* nor did it purport to decide that
question differently. In *Burk,* a completed battery
was charged as an assault; intent to injure was not
a requisite element because the crime of battery
can be committed recklessly or negligently.

The dictum in the lead opinion in *Sanford* is not
"controlling", nor is the decision of the Court of
Appeals in *Richard Johnson.*

6) The characterization of an offense as a gen-
eral or specific intent crime, while important for
some purposes, is at best a conclusion generally
derived from the elements of the offense. It is
therefore circular to decide what those elements
are based on the conclusion that the offense is a
general or specific intent crime.

7) Even if menacing is to be an alternate means
of committing the crimes of assault and felonious
assault, it does not follow that there is no specific
or particular mental element. In those jurisdic-
tions where at common law menacing is an alter-
nate means of committing the offense, an intent to
threaten is an element of the offense. There thus
must be either an intent to injure/touch offen-

sively *or* an intent to threaten. It appears to be unprecedented in any jurisdiction to hold that the common-law crime of assault can be committed by the intentional commission of an "unlawful act" without regard to whether that act is committed with intent to injure/touch offensively or intent to threaten.

8) Instructing a jury, as in *Johnson,* that it must find an "intentional assault" does not differentiate between intent to commit an act from which an inference of intent to injure or, if material, to threaten *may* be drawn, and intent so to injure or threaten. The instruction was not, therefore, "sufficient". The error in refusing to instruct in accordance with the law then extant cannot, on the facts (see fn 1), be said to have been harmless.

9) Heretofore, when this Court has changed the definition of a criminal offense, it has applied its new ruling prospectively. Johnson and Ring are entitled to have their cases tried under the definitions of the crimes of assault and felonious assault extant when their offenses were committed, prior to the *Sanford* dictum.

I

The lead opinion concludes based on A) verbal analysis of the assault chapter of the penal code and B) a sentence in a text, that assault with a dangerous weapon is a general intent crime, from which it further concludes that intent to injure/touch offensively is not an element of the offense.

A

It reasons that because felonious assault is

defined to exclude two forms of specific intent[2] and no specific intent is stated, although most other assault sections particularly define a specific intent, the Legislature did not intend that there be a specific intent for felonious assault. It is argued that the Legislature "demonstrates beyond peradventure that when it intends a particular offense to require a specific intent, it knows how to, and does, require that specific intent". The Legislature's failure to state a specific intent "demonstrates that in the case of felonious assault it does not intend to require a specific intent".

The argument assumes that because a *categorical* specific intent has been stated in certain assault sections a *generic* specific or particular intent would also be stated, and fails to consider, in its statutory analysis, the mental element of the common-law crime of assault.

We agree with the lead opinion that the Legislature intended that felonious assault be the common-law crime of assault committed with a dangerous weapon. A specific or particular mental element (intent to injure) is required for commission of the common-law offense. The Legislature incorporates that mental element when it uses the term "assault".[3] Its failure to state explicitly that mental element in the statute does not eliminate it as an element. There is generally an "intent to" element of common-law offenses.

· One does not expect to find a requisite intent, or indeed any element, of a common-law offense stated in the statute (although elements are some-

---

[2] This Court has said that the Legislature's purpose in negativing the two excluded forms of intent was "to save the declared crime from falling within other defined felonies". *People v Doud,* 223 Mich 120, 122; 193 NW 884 (1923).

[3] See fn 24, *infra,* concerning conditional assaults.

times stated), but looks to the common law for a complete definition.

Among the common-law offenses for which no mental element is stated in the penal code for which there is a specific or particular mental element are murder[4] (malice aforethought), voluntary manslaughter[5] (intent to kill), larceny,[6] robbery,[7] and breaking and entering with intent to commit larceny[8] (wrongful taking with intent to deprive the owner of his property permanently). No mental element or specific or particular intent is stated in the attempt sections of the penal code[9] and yet it is well settled that a necessary element of any attempt to commit another offense is an intention to commit that offense.[10]

Although no "specific intent" is stated in the pertinent sections of the penal code, this Court has held that larceny[11] and burglary (breaking and entering)[12] are, for purposes of the defense of voluntary intoxication, specific intent crimes.[13]

The argument based on the Legislature's failure to restate the "intent to" required for commission of an assault is thus at odds with the jurisprudence.

---

[4] MCL 750.316; MSA 28.548.

[5] MCL 750.321; MSA 28.553.

[6] MCL 750.356; MSA 28.588.

[7] MCL 750.529, 750.530; MSA 28.797, 28.798.

[8] MCL 750.110; MSA 28.305.

[9] MCL 750.91, 750.92; MSA 28.286, 28.287.

[10] See *People v Bauer,* 216 Mich 659, 661; 185 NW 694 (1921); *People v Coleman,* 350 Mich 268, 276, 278; 86 NW2d 281 (1957); 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1071, p 1016; LaFave & Scott, Criminal Law, § 59, p 423.

[11] *People v Walker,* 38 Mich 156 (1878); accord, LaFave & Scott, *supra,* § 45, p 343.

[12] *People v Eggleston,* 186 Mich 510; 152 NW 944 (1915).

[13] The Court of Appeals has, on that authority, reached the same conclusion with regard to robbery. *People v Kelley,* 21 Mich App 612, 619; 176 NW2d 435 (1970).

The delineation of specific or particular intents in differentiating the categorical assaults evidences a legislative purpose to provide differential penalties for different kinds of assaults that otherwise would all entail the same penalty, not a purpose to change the mental element of the undifferentiated offense of common-law assault.

We do not suggest that all statutes incorporating assault as an element of the offense require an intention to commit bodily injury. When the Legislature indicates that frightening is, or is to be treated as, an assault, it is:

"Any person who shall, by force and violence, *or by assault or putting in fear,* feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years." MCL 750.530; MSA 28.798 (emphasis supplied).[14]

B

The sentence in a text relied on to support the assertion in the lead opinion that "[g]enerally assault with a dangerous weapon is interpreted as a general intent crime" is supplemented in the pocket part by a statement that "[i]n those jurisdictions which hold that an intent to inflict injury is an essential element of the crime of simple

---

[14] Another example of a legislative purpose that the victim's state of mind shall be determinative is the assault with intent to rob, armed statute:

"Any person, being armed with a dangerous weapon, *or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon,* who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years." MCL 750.89; MSA 28.284 (emphasis supplied).

assault, it necessarily follows that such intent is also required for the offense of assault with a deadly or dangerous weapon".[15] That statement is based upon Anno: *Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon,* 92 ALR2d 635, 637, 643.

It appears from the annotation that whether "an intent to do physical harm or bodily injury" was an element of the crime of assault with a deadly or dangerous weapon, in those jurisdictions which had not statutorily defined the crime of assault, turned generally on whether the jurisdiction had expanded the common-law definition (see Part II, *infra)* of the crime of assault to include menacing (creating an apprehension of injury) assaults. In a clear majority of the jurisdictions listed[16] an intent to do physical harm or bodily injury was an element. That is not to say that the question should be decided by counting noses, but it does indicate that the view adopted in *Doud* prevailed in a substantial number of other jurisdictions.

## C

One can agree with the lead opinion that "[t]he obvious intent of the Legislature is to punish more severely those assaults accompanied by some degree of aggravation, *i.e.,* serious injury, use of a

[15] 1 Anderson, Wharton's Criminal Law & Procedure (1979 Pocket Part), § 361, p 159.

[16] We note that the Anno: *Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon,* 92 ALR2d 635, 636, contains the following limiting statement:

"* * * No attempt has been made to collect the numerous cases which have defined the offenses here considered without including the element of intent to do physical harm, but in which no specific contention was raised or dealt with that such intent was necessary, although such cases may arguably support the contention that an intent to do physical harm is not a necessary element of the crime."

dangerous weapon or a specific intent" without agreeing with the implication that the enlarged penalty may be imposed simply because a dangerous weapon was used.

As the lead opinion acknowledges in the next sentence, "the basic assault must be established, accompanied by the aggravating circumstances". However the question is approached, it is necessary to determine what constitutes "the basic assault" which, again, turns on the common-law definition. Statutory analysis does not assist in determining what constitutes "the basic assault" as long as the lead opinion maintains, as we agree, that it is the common-law crime of assault.

In this connection it is noteworthy that in holding that intent to do bodily harm was an element of felonious assault, *Doud* acknowledged that the legislative purpose was to increase the penalties when an assault is committed with a dangerous weapon but nevertheless concluded that such a purpose did not eliminate from jury consideration the actor's "intent or purpose".[17]

## II

At common law "a criminal assault was an attempt to commit a battery and that only".[18] "An attempt to commit any crime requires a specific intent to commit that crime; and so assault of the attempted-battery sort requires an intent to com-

---

[17] "Evidently feeling that the penalty for simple assault did not meet occasions where a dangerous weapon was employed the legislature fixed a greater penalty for such aggravated assaults *but did not eliminate the question of intent or purpose, involved in every case of assault of a criminal nature." People v Doud, supra,* p 124 (emphasis supplied).

[18] Perkins, Criminal Law (2d ed), p 114; Clark & Marshall, Law of Crime (7th ed), § 10.15, p 720.

mit a battery, *i.e.,* an intent to cause physical injury to the victim."[19]

In many jurisdictions, by statute or judicial decision, the tort concept that causing reasonable apprehension of physical injury is actionable[20] was incorporated into the definition of the crime of assault. In those jurisdictions the scope of the crime includes *"in addition to* [emphasis in original] (not as an alternative to) the attempted-battery type of assault, the tort concept of the civil assault, which is committed when one, with intent to cause a reasonable apprehension of immediate bodily harm (though not to inflict such harm), does some act which causes such apprehension".[21]

A text writer states that the enlargement by judicial decision in some jurisdictions of the scope of the crime of assault to include menacing as an alternative means of committing the crime "did not come about as a result of a conscious effort to enlarge the scope of a criminal offense, but as a consequence of the confusion caused by the use of the same word to represent two different concepts".[22] The word "assault" has one meaning in the criminal law, another meaning in tort law, and still other meanings in ordinary usage.

[19] LaFave & Scott, *supra,* § 82, p 610; Clark & Marshall, *supra,* § 10.15, p 725; Perkins, *supra,* p 114.

[20] "(1) An actor is subject to liability to another for assault if

"(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

"(b) the other is thereby put in such imminent apprehension.

"(2) An action which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for an apprehension caused thereby although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm." 1 Restatement Torts, 2d, § 21, p 37.

Similarly, see Prosser, Torts (4th ed), § 10, p 37; 1 Harper & James, Law of Torts, § 3.5, p 221. See, also, *Tinkler v Richter,* 295 Mich 396; 295 NW 201 (1940).

[21] LaFave & Scott, *supra,* § 82, p 611.

[22] Perkins, *supra,* p 117.

In Michigan the distinction between the criminal and civil law definitions was carefully observed and preserved in *Doud*. The trial judge had instructed that in determining whether a felonious assault had been committed "defendant's acts governed and not his secret intention". In concluding that the instruction was erroneous, this Court said that an assault "involves an intent or purpose to inflict a corporal hurt to another". While "[t]he intent to do an injury may be found and usually is found from the acts of the accused", "[t]he defendant, however, is at liberty to tell his purpose, even though contradicted by his every act, and have the same go to the jury. Such is the law of simple assault". Even though the defendant's claim that "he entertained no purpose to inflict injury" "was refuted by his acts, demeanor and words, defendant had a right to go to the jury with what he claimed to have been his purpose". *People v Doud, supra,* pp 123, 124.

The prosecutor had argued that 2 Bishop, Criminal Law (7th ed), § 23, cited in *People v Carlson,* 160 Mich 426; 125 NW 361 (1910), was authority for the view that if defendant merely created a reasonable apprehension of bodily injury on complainant's part this was sufficient to constitute a criminal assault. *Doud* confronted and rejected this argument:

"While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, *is mentioned in some of the books as proper evidence to go to the jury, we do not understand that fear governs upon the question of the intent or purpose of an accused under this statute." People v Doud, supra,* p 125 (emphasis supplied).

*Doud* is consistent with *People v Lilley,* 43 Mich 521, 524-525; 5 NW 982 (1880), where the Court indicated that intent to commit violence was an element of assault. The trial judge had instructed that if defendant's actions were sufficient to "induce a man of ordinary firmness to believe that he is in immediate danger of receiving such threatened injury" the defendant would be guilty of an assault. This Court deemed the instruction inadequate, concluding that even if the complainant apprehended injury, the defendant must nevertheless have possessed a present ability to carry out "an intent to commit violence" and whether he did was a question for the jury under proper instructions.

In *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947), the Court said that there was sufficient evidence from which the jury could infer "intent to injure".

In *People v Carlson, supra,* as in *Counts,* the issue was not instructions but sufficiency of evidence. The Court, applying the concept of conditional assault[23] (a threat with a show of force and an unlawful condition), concluded that there was sufficient evidence from which the jury could infer the requisite elements of assault. *Doud* reiterated that concept, declaring that threats with a show of force on an unlawful condition constitute sufficient evidence from which the jury could infer an intent to injure.[24]

While the question of sufficiency of evidence to

---

[23] "Where, as in this case, an assault is threatened, *coupled with an unlawful condition,* the question to be decided is whether the acts done are sufficient to be submitted to a jury to find an assault as a question of fact." *People v Carlson,* 160 Mich 426, 429; 125 NW 361 (1910) (emphasis supplied).

[24] A text states the concept of conditional assault thus:

"With assault defined in terms of attempted battery, one may point a loaded gun at another, or flourish a knife in his face, with a threat,

go to the jury and the question of what the jury must find are related, if for no other reason than because both involve the elements of the offense, mere sufficiency of evidence does not conclude the matter. The jury function consists of more than a mere reassessment of the judge's decision regarding the prima facie sufficiency of the evidence. The jury must determine whether it is persuaded by such evidence of defendant's guilt beyond a reasonable doubt. Accordingly, decisions like *Counts* and *Carlson* —which concern only the sufficiency of evidence and where there is no issue of the adequacy of the instructions—are often of little guidance on and indeed may obscure an instructional issue; an instruction phrased in terms of sufficiency of evidence, merely stating what the prosecutor must prove but not stating what the jury must find, does not instruct a lay jury concerning the question before it.

## III

*Burk* and *Sanford* did not separately, *seriatim* and *sub silentio* overrule *Doud's* holdings that intent to cause bodily injury was an element of assault and, hence, of felonious assault, and that the offense is not made out by proof of apprehension of injury.

## A

The proofs in *Burk* showed an actual physical

---

which he intends to carry out, to injure the other unless the latter does something he is not legally obliged to do or refrains from doing something he is legally entitled to do—as where *A*, with loaded gun pointed, tells *B*, 'I'll shoot you if you say that again' or 'I'll fire if you don't raise your hands.' It is no defense to assault of the attempted-battery sort that the victim can and does avoid injury by acceding to the other's unlawful condition; or, putting it another way, the required intent to injure is not negatived by such a condition which accompanies the defendant's act and threat." LaFave & Scott, *supra,* § 82, p 613.

injury. Completed batteries were not infrequently charged as assaults as well as assault and batteries,[25] and in such cases intent to injure was not a necessary element of the offense. Negligent or reckless acts causing injury or mere unlawful touching may constitute a battery.[26]

The disputed factual issue was whether Burk had in fact struck Foster, not whether he intended to strike him. Burk had been sentenced to 30 days. The prosecutor did not on appeal cite or challenge *Doud* or assert that intent to injure was not an element of the offense but, rather, that there was no reversible error.[27]


B


In its discussion of Michigan case law the lead opinion in *Sanford* cited *Lilley, Carlson* and *Doud* but made no reference whatsoever to *Burk;* the claim in the lead opinion in the instant cases that *Burk* overruled a part of the *Doud* holding was not advanced in the lead opinion in *Sanford.*

*Sanford* was not a case of felonious assault but of assault with intent to rob. The declaration in the lead opinion in *Sanford* that the common-law offense of assault can be committed by either an attempted battery or creation of reasonable apprehension of injury was not necessary to decision. No opinion was signed by a majority of the Court.

[25] Perkins, *supra,* pp 115-116; LaFave & Scott, *supra,* § 80, p 603; 1 Wharton, *supra,* § 229, p 676.

[26] Perkins, *supra,* pp 129-130; LaFave & Scott, *supra,* § 81, pp 605-606.

[27] "When the testimony of the case is reviewed in connection with these charges it is submitted that the law was explained to the jury with sufficient clearness so that the court should not say there is reversible error." Michigan Supreme Court Records and Briefs (138-153 January Term, 1927), Docket No. 146, Appellee's Brief, p 5.

Neither *Doud* nor *Burk* was cited in either the defendant's or prosecutor's brief. The lead opinion in *Sanford* made no reference whatsoever to *Doud's* conclusion that felonious assault is not established by showing apprehension of injury and did not seek to overrule it.

The issue in *Sanford* was whether assault with intent to rob not armed[28] and attempted robbery unarmed[29] are identical crimes. The decision that they are not and a reason therefor is there stated in the conclusion and in fn 1 of the lead opinion. Three Justices signed that opinion; two concurred in its result and agreed with the disposition of that issue; two others concurred in the disposition of that issue in a separate opinion.

Part II of the *Sanford* lead opinion, heavily relied on in the lead opinion in the instant case, did not deal with *any issue* in *Sanford* but, rather, expressed disagreement with the Court of Appeals statement that creation of a reasonable fear of immediate injury was a necessary element of the crime of assault. The lead opinion in *Sanford* pointed out correctly that while that is the rule in civil cases, the word assault has a different meaning in the criminal law:

"Traditionally, 'the word "assault" represented an entirely different concept in criminal law than it did in the law of torts.' Perkins on Criminal Law (2d ed), Assault, p 114. As a consequence, dependence on a civil law definition gives little support to the Court of Appeals position." *People v Sanford, supra,* p 477.

The lead opinion in *Sanford* might well have stopped there. There was no need to do more than correct the Court of Appeals misstatement that

---

[28] MCL 750.88; MSA 28.283.

[29] MCL 750.530; MSA 28.798. MCL 750.92; MSA 28.287.

creation of apprehension of injury (a necessary element of the tort of assault) was also a necessary element of the crime of assault. There was no need to consider whether creation of an apprehension of injury is an alternative manner of committing the crime of assault.

The lead opinion in *Sanford* went on, however, to attempt an exegesis of the law of the crime of assault without benefit of adversary presentation on that question and without any need to do so either to correct the opinion of the Court of Appeals or to decide any question presented. It recognized correctly that the reference to Bishop in *Carlson* was "ambiguous", but ignored *Doud's* holding rejecting apprehension of injury as an alternative means of committing the crime of assault, and adopted Perkins' summary of the alternative kinds of assaults without recognition of his caveat that those jurisdictions that had adopted by judicial decision apprehension of injury as part of the criminal law definition had done so by making precisely the same error for which it chided the Court of Appeals—failing to distinguish between the tort law and criminal law definitions of assault.

In the instant cases the lead opinion dismisses statements in the opinion of the Court in *Counts* (a felonious assault case), on the ground that it does not appear that they concerned "a direct issue in that case", but elevates the dictum of the lead opinion in *Sanford* (not a felonious assault case) to a "holding", a "ruling", "controlling case law" and "superseding" *Doud.*

The lead opinion in the instant case gives no reason for its conclusion that intent to injure is not an element of the offense other than that *Burk* overruled one part of the *Doud* holding and *San-*

*ford* another. No reason for such an overruling was stated in either case, neither of which purported to overrule *Doud.* The only intimation of a reason in *Sanford* is that the rule is such in a majority of jurisdictions.[30]

Whether that is the rule in a majority of jurisdictions or not,[31] this Court is obliged to give a better reason than that others are doing it for adoption of a new rule of law overruling a decision of the Court, nearly contemporaneous with the enactment of the statute, which has guided the disposition of cases for more than half a century.

The commentary to the proposed Michigan Criminal Jury Instructions,[32] the commentary to

---

[30] See fn 31, *infra.* But see fns 51 and 52, *infra,* and accompanying text which indicate that as a result of statutory definition, in most jurisdictions assault and menacing are separate offenses, separately punishable, and menacing, even with a deadly or dangerous weapon, is not, in a majority of those jurisdictions, punished as a felony.

[31] LaFave & Scott and Perkins do say that a "majority" of jurisdictions have declared that creation of apprehension of injury is an alternative means of committing the crime of assault. They cite as authority the commentary to the Model Penal Code, Tentative Draft No 9, 1959, § 201.10, p 83. That commentary does not, however, support its statement with a list of the jurisdictions which have done so by judicial decision.

An appendix to the commentary, pp 141-142, indicates that when the commentary was prepared or published (1959) the crime of assault was not statutorily defined in 32 jurisdictions and in 10 jurisdictions was so defined as to require an intent "to commit a violent injury".

See fns 51 and 52, *infra,* indicating that since that time most jurisdictions have now statutorily defined the offense.

As appears from the Anno, *supra,* concerning an assault with a deadly or dangerous weapon (see fn 16 and accompanying text, *supra),* the majority of jurisdictions which considered the issue in the context of the common-law definition required an intent to inflict bodily injury.

[32] "There are two distinct types of criminal assault: the attempted battery type and the intentional creation of apprehension of battery type. Both of these are recognized as an assault in the majority of jurisdictions, *but the second is rejected by the minority view and Michigan."* 2 Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), Commentary, p 17-26 (emphasis supplied).

the proposed revised Michigan criminal code[33] and Gillespie's treatise[34] are in accord that Michigan has recognized only the attempted battery type of assault and not the creation of apprehension of injury type of assault.

IV

The characterization of an offense as a general or specific intent crime, while important for some purposes, is at best a conclusion generally derived from the elements of the offense. It is therefore circular to decide what those elements are based on the conclusion that the offense is a general or specific intent crime.

The lead opinion in the instant cases says that simple criminal assault is "acknowledged as a

[33] "It is not clear under Michigan case law whether the several 'assault with intent' statutes cover infliction of the fear of being the victim of a criminal act. In one case *[People v Carlson,* 160 Mich 426; 125 NW 361 (1910)], the Supreme Court rejected defendant's contention that a threat to use physical violence not in fact accompanied by physical contact could not constitute an assault with intent to commit rape, and held that such an assault might be committed without an actual touching. Since, however, the Court felt the jury could in fact find an intent to rape, the case is not necessarily authority for the proposition that creating the apprehension of receiving serious physical injury constitutes an assault; *the logic of statements in other cases suggests that an attempt or purpose to batter is probably required."* Special Committee of the Michigan State Bar for the Revision of the Criminal Code and Committee on Criminal Jurisprudence, State Bar of Michigan, Michigan Revised Criminal Code (Final Draft, September, 1967), p 168 (emphasis supplied).

[34] "While the [felonious assault] statute expressly negatives certain felonious intents this does not eliminate the question of *criminal intent.* An assault under practically all definitions, must carry on the face of its attendant circumstances an offer or attempt with force or violence to do *corporal hurt to another. This involves an intent or purpose to inflict corporal hurt to another.* * * * While the fear of one assaulted, arising from reasonable apprehension of bodily harm threatened by another having means and ability to inflict the same, is mentioned in some books as proper evidence to go to the jury, *such fear does not govern* upon the question of the intent or purpose of an accused under the statute." 2 Gillespie, *supra,* § 1044, p 988 (emphasis supplied).

general intent crime" "in relation to the intoxication defense", citing *People v Comstock,* 115 Mich 305, 312; 73 NW 245 (1897), where, in a case concerning the mental element for a banking law violation, the court stated in dictum that "an assault *and battery* is not excused by voluntary drunkenness". (Emphasis supplied.) "Assault *and battery*" means the commission of an actual battery. LaFave & Scott indicates that the *Comstock* dictum is correct "since battery can be committed not only with an intent to do the physical act of striking the other person (which intoxication can negative) but also, without any such intent to strike, by recklessly striking; and recklessness cannot, by the weight of authority, be negatived by intoxication".[35]

*Counts* (in which, as here, there was no battery) stated that felonious assault is a specific intent crime and indicated that intoxication is a defense.[36]

Fletcher identifies four kinds of general intent and three kinds of specific intent.[37] Hall states: "The current confusion resulting from diverse uses of 'general intent' is aggravated by dubious efforts to differentiate that from 'specific intent.'"[38] LaFave & Scott concludes that it would be best to abandon the murky distinction between general and specific intent which does not assist and frequently avoids analysis:

[35] LaFave & Scott, *supra,* § 45, p 344.

[36] *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), characterized in the opinion of the Court as "controlling case law", made no reference to *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947), and concluded on the authority of *People v Comstock,* 115 Mich 305; 73 NW 245 (1897), that the defense of intoxication is not available in a felonious assault prosecution.

No issue concerning the defense of intoxication is presented in the instant case.

[37] Fletcher, Rethinking Criminal Law, § 6.5.6, p 453.

[38] Hall, General Principles of Criminal Law (2d ed), p 142.

"By way of conclusion, it may be said that it is better, when considering the effect of the defendant's voluntary intoxication upon his criminal liability, to stay away from those misleading concepts of general intent and specific intent. Instead one should ask, first, what intent (or knowledge) if any does the crime in question require; and then, if the crime requires some intent (knowledge), did the defendant in fact entertain such an intent (or, did he in fact know what the crime requires him to know)." LaFave & Scott, Criminal Law, § 45, p 344.

## V

Even if menacing is to be an alternate means of committing assault and felonious assault, it does not follow that there is no specific or particular mental element. In those jurisdictions where at common law menacing is an alternate means of committing the offense, an intent to threaten is an element of the offense. There thus must be either an intent to injure/touch offensively *or* an intent to threaten.

LaFave & Scott states that attempted battery assault "requires an intent to commit a battery, *i.e.,* an intent to cause physical injury to the victim",[39] and that creating reasonable apprehension of injury assault requires "an actual intention to cause apprehension unless there exists the morally worse intention to cause bodily harm".[40] Perkins states: "As explained by one writer [Hall] after exhaustive research, 'there can be *no assault without physical injury* [emphasis in original], unless there was an *intention* [emphasis supplied] to inflict harm or at least to cause apprehension,' but

[39] LaFave & Scott, *supra,* § 82, p 610.
[40] *Id.,* p 611.

no such intent is required for injurious assault
[i.e., a battery]."[41]

The decisions in those jurisdictions where at
common law the crime of assault can be commit-
ted by menacing uniformly hold that an intention
to create an apprehension of injury is an element
of the offense.[42] It appears to be unprecedented to
conclude otherwise.

Further, since civil "[a]ssault, like battery, is
regarded as an intentional tort because it is neces-
sary that the defendant either have intended to
commit a battery or to cause in the plaintiff an
apprehension of a battery",[43] it would be ironic,
considering that the expansion in some jurisdic-
tions of the scope of the crime of assault to include
apprehension of injury assaults came about largely
by adoption of that tort law concept, if the mental
element required for the tort was not required for
the crime. There is no justification for ordaining a
less culpable mental state for criminal assault
than for tortious assault.[44]

[41] Perkins, *supra,* p 130.

Hall, *Assault and Battery by the Reckless Motorist,* 31 J Crim L &
Criminology 133, 158 (1940), analyzes the development of the doctrine
that a conviction of committng an actually injurious assault does not
require intent to injure but only criminal recklessness or negligence.
With respect to even this slight expansion of the scope of criminal
assault Hall concluded, "[w]ith legislatures as active as they are
today, and in a better position than most courts to judge of the
desires of their citizens, judicial restraint seems wiser than ever".

[42] See *Commonwealth v White,* 110 Mass 407 (1872); *State v Baker,*
20 RI 275; 38 A 653 (1897); *State v Hazen,* 160 Kan 733; 165 P2d 234
(1946); *State v Wilson,* 218 Or 575; 346 P2d 115 (1959); *Ball v United
States,* 147 F 32 (CA 9, 1906); *State v Paxson,* 99 A 46 (Del Ct Gen
Sess, 1916); *Anthony v United States,* 361 A2d 202, 206 (DC Ct App,
1976); *Commonwealth v Slaney,* 345 Mass 135; 185 NE2d 919 (1962).

[43] 1 Harper & James, *supra,* § 3.5, p 221. Similarly, see fn 20, *supra.*

[44] In undertaking to expand the scope of the crime of assault the
Court will confront several issues, some of which are pertinent to the
instant cases.

There is a split of authority whether when a defendant is charged
with creating apprehension of injury the victim need actually be put

## VI

Instructing a jury, as in *Johnson,* that it must find an "intentional assault" does not differentiate between intent to commit an act from which an inference of intent to injure or, if material, to threaten, *may* be drawn, and intent to injure or threaten. The instruction was not, therefore, "sufficient". The error in refusing to instruct in accordance with the law then extant cannot, on the facts (see fn 1), be said to have been harmless.

The judge charged the jury:

"An assault is an attempt or offer with force and violence to harm another.

"If you are satisfied from the testimony that Mr. Johnson committed an intentional assault with a revolver which is a dangerous weapon likely to produce great bodily injury or is one more accurately described in the manner in which it is attempted to be used to commit great bodily harm."

The defendant sought and was refused an instruction that the jury may not convict unless it finds that he intended to inflict physical injury. Although the prosecutor now maintains that creating an apprehension of injury is sufficient for conviction, the jury was not so instructed, no doubt because that was not then the law.

in fear or whether it is sufficient that a reasonable man would be in fear. The majority hold that the victim need actually be apprehensive of receiving bodily injury. See *Price v United States,* 156 F 950 (CA 9, 1907); *Commonwealth v White,* 110 Mass 407 (1872); *State v Deso,* 110 Vt 1; 1 A2d 710 (1938); *Blankenship v State,* 130 Miss 725; 95 So 81 (1923); *State v Barry,* 45 Mont 598; 124 P 775 (1912); *State v Hazen,* fn 42 *supra; State v Wilson,* 218 Or 575; 346 P2d 115 (1959); *State v Sawyer,* 28 NC App 490; 221 SE2d 518 (1976); *Dawson v State,* 338 So 2d 242 (Fla App, 1976); *United States v Bell,* 505 F2d 539, 541 (CA 7, 1974), *cert den* 420 US 964; 95 S Ct 1357; 43 L Ed 2d 442 (1975). A few cases seem to hold that the standard should be whether a reasonable man would be apprehensive of injury. *Anthony v United States,* 361 A2d 202, 206 (DC Ct App, 1976); *Commonwealth v Slaney,* fn 42 *supra.* But see *United States v Bell, supra.*

The instruction given makes no reference to the defendant's mental state. It simply repeats Hawkins' timeworn definition (1 Hawkins, Pleas of the Crown [6th ed], ch 62, § 1) which now has different meanings in the several states and the true meaning of which engendered these appeals. A text, in analyzing Hawkins' definition, states:

"The disjunctive phraseology, 'attempt or offer,' is troublesome because modern readers ascribe to the word 'attempt' its technical criminal-law meaning. This approach tends toward reading the balance of the phrase as one containing an exclusionary 'or' which results in 'offer' appearing as a specific alternative, as though it referred to behavior having different qualitative and quantitative aspects than that requisite for an attempt. * * * But the illustrations employed by Hawkins suggest behavior that would and could lead to physical contact with the victim. His description manifests a struggle in describing the pattern of punishable behavior which has not produced actual physical harm. These examples are also consonant with an 'offer' to do corporal hurt to another. Some modern text writers define assault as an apparent attempt to inflict corporal harm on another, *thus appearing to ignore completely the issue of criminal intent on the part of the actor.*" Clark & Marshall, Law of Crimes (7th ed), § 10.15, p 720 (emphasis supplied).

Given the difficulty that courts and commentators have had with Hawkins' definition, surely we cannot say with confidence that jurors understand and comprehend the true meaning. Adding that the jury must find an "intentional assault" but begs the question of whether it is sufficient that the evidence tends to show an intention to cause injury or other harm or whether the jury must additionally find a subjective intent to injure.

## VII

The Court is indeed empowered to redefine common-law concepts although they are incorporated into a statute.[45]

### A

It would, however, be one thing for this Court to hold that henceforth the creation of an apprehension of injury is sufficient to constitute the common-law crime of assault (a misdemeanor), and quite another to incorporate that definition into the felonious assault statute. Assimilating such a redefinition into a felony statute results in a substantial aggravation of the scheme of criminal penalties. It subjects persons to felony convictions and punishment of a possible four years in prison for the commission of acts which the Legislature has elsewhere implied deserve punishment only as misdemeanors. A statute provides that it is only a misdemeanor to "intentionally, without malice, point or aim any fire-arm at or toward any other person",[46] despite the dangers of inducing a breach of peace or causing apprehension which accompanies such actions.

This aggravation of the penalties is compounded by the felony gun law[47] which, as a result of the redefinition today of the crime of felonious assault, may require a minimum sentence of two years for the newly created felony of menacing with a gun although there is no intent to injure.

### B

It appears from the history of the development

---

[45] *Gruskin v Fisher,* 405 Mich 51, 58; 273 NW2d 893 (1979).

[46] MCL 750.233; MSA 28.430.

[47] MCL 750.227b; MSA 28.424(2).

of the crime of assault that courts in this and other jurisdictions have felt a need to sustain assault prosecutions where there is evidence of threats accompanied by a show of force. The Michigan conditional assault cases, *Carlson* and *Doud,* reflect that policy. While some jurisdictions permit conviction if the trier finds an intent to threaten, Michigan has not heretofore gone that far and has taken an intermediate position. It requires the trier to find an intent to injure, although it permits the trier to infer that intent from evidence of threats accompanied by an unlawful condition and a show of force. The prosecutor is not required to prove that a gun was loaded; "the fact that the gun was unloaded (if such be the fact) is a matter of defense".[48]

The intermediate position adopted by the Court in *Doud,* allowing the trier to infer intent to injure from evidence of threats coupled with a statement of an unlawful condition and evidence of the proscribed kind of force, allows the trier to convict when persuaded that the defendant intended to injure the complainant unless he or she complied with the condition, and to acquit when persuaded that no injury was intended and that the threat, albeit frightening to the complainant, was idle.

## C

When the Model Penal Code was proposed, in a majority of jurisdictions the definition of the crime of assault was governed by the common law.[49]

---

[48] *State v Herron,* 12 Mont 230; 29 P 819 (1892), quoted in *People v Doud, supra,* pp 128-129.

See, generally, Anno: *Fact that gun was unloaded as affecting criminal responsibility,* 79 ALR2d 1412.

[49] See Model Penal Code (Tentative Draft No 9, 1959), art 201, app h, pp 141-143.

Subsequently, revision of the statutory law in most states has left only nine states in addition to Michigan in which a common-law definition still governs.

The disparity in legislative judgments, reflected in such statutes, reinforces our belief that it is not appropriate for this Court to make the choices involved in a redefinition of the common-law offense of assault and the statutory offense of felonious assault to make menacing a crime and menacing with a gun a felony. Of the 40 states which have statutorily defined assault and felonious assault, a substantial majority have followed the Model Penal Code[50] in rejecting punishment as a felony for menacing whether committed with a deadly or dangerous weapon or not:

—26 do not punish menacing at all or punish it as a misdemeanor which typically subjects the offender to a maximum punishment of one year imprisonment, not enhanced through use of a deadly or dangerous weapon.[51]

[50] While the Model Penal Code includes as a simple assault "attempts by physical menace to put another in fear of imminent serious bodily injury", 10 ULA, Model Penal Code § 211.1(1)(c), that offense is punishable as a misdemeanor. The code does not enhance the offense when committed with a deadly or dangerous weapon. Only attempts to cause serious bodily harm are punishable as felonies under the code. Id., § 211.1(2), p 538.

[51] The following states, following the Model Penal Code, punish menacing as an offense, but do not enhance the penalty when it is committed with a deadly or dangerous weapon: Ala Code, tit 13A, §§ 13A-6-20—13A-6-23 (eff. June 1, 1979); Ark Stat Ann, §§ 41-1604—41-1607; Cal Penal Code, §§ 240, 245, 417; Conn Gen Stat Ann, §§ 53a-59, 53a-62; Del Code Ann, tit 11, §§ 602, 611-613; Iowa Code Ann, §§ 708.1, 708.2 (West, 1979 Special Pamphlet); Ky Rev Stat, §§ 508.010-508.050; Mo Ann Stat, §§ 565.050-565.070 (Vernon, 1979 Special Pamphlet, Criminal Code); Neb Rev Stat, §§ 28-308—28-310; NH Rev Stat Ann 631:1-631:4; NY Penal Law (McKinney), §§ 120.00-120.15; ND Cent Code, §§ 12.1-17-01, 12.1-17-02, 12.1-17-05; Page's Ohio Rev Code Ann, §§ 2903.11-2903.22; Okla Stat Ann, tit 21, §§ 641, 645; Or Rev Stat, §§ 163.160-163.190; Pa Stat Ann (Purdon), tit 18, §§ 2701-2702; SD Compiled Laws Ann, §§ 22-18-1, 22-18-1.1; Vt Stat Ann, tit 13, §§ 1023-1024; W Va Code Ann, § 61-2-9. Utah defines

—14 enhance the punishment for menacing when committed with a deadly or dangerous weapon,[52] typically up to a maximum of four or five years imprisonment. In 3 of the 14 the aggravated offense of menacing with a deadly weapon is punished as or like a misdemeanor.[53]

It is apparent that there is no consensus of legislative judgment. In 29 of the 40 states[54] menacing with a deadly or dangerous weapon is not

assault as encompassing "[a] threat, accompanied by a show of immediate force or violence, to do bodily injury to another", Utah Code Ann, § 76-5-102, and punishes as aggravated assault an assault committed with a deadly weapon, *id.,* § 76-5-103(1)(b). However, the aggravated assault statute has been interpreted to require an intent to do bodily harm. *State v Potello,* 42 Utah 396; 132 P 14 (1913); *Green v Turner,* 409 F2d 215 (CA 10, 1969).

The following states have no statutory provisions which explicitly punish mere menacing or menacing with a deadly or dangerous weapon: Hawaii Rev Stat, §§ 707-715; Idaho Code, §§ 18-901—18-906, 18-910; Ind Code, §§ 35-42-2-2, 35-42-2-3; Nev Rev Stat, § 200.471; Wis Stat, §§ 939.32, 940.19; Wyo Stat Ann, §§ 6-4-501, 6-4-506.

[52] The following states aggravate the punishment for menacing when committed with a deadly or dangerous weapon: Alas Stat, §§ 11.15.190, 11.15.220; Ariz Rev Stat Ann, §§ 13-1202—13-1204 (1978 Special Pamphlet); Colo Rev Stat Ann, § 18-3-206; Fla Stat Ann, §§ 784.011, 784.021; Ga Code Ann, §§ 26-1301, 26-1302; Ill Ann Stat, ch 38, §§ 12-1, 12-2 (Smith-Hurd, 1979 Cum Supp); Kan Stat Ann, §§ 21-3408, 21-3410; La Rev Stat, §§ 14:36-14:38; Me Rev Stat Ann, tit 17-A, §§ 209, 1252.4 (1978 Special Supp); Minn Stat Ann, §§ 609.22, 609.225; Mont Rev Codes Ann, §§ 94-5-201, 94-5-202; NJ Stat Ann, § 2C:12-1 (1979 Special Supp) (eff. September 1, 1979); NM Stat Ann, §§ 30-3-1, 30-3-2; Tex Penal Code Ann, §§ 22.01, 22.02.

[53] Illinois punishes assault, including menacing, with a deadly weapon as a misdemeanor with a maximum imprisonment of one year. Ill Ann Stat (Smith-Hurd, 1979 Cum Supp), ch 38, §§ 12-2, 1005-8-3.

Louisiana imposes a maximum punishment of six months and a $500 fine. La Rev Stat § 14:37.

New Jersey punishes menacing with a firearm as an aggravated assault only when committed under circumstances manifesting extreme indifference to human life and then with a maximum penalty of 18 months and a $7,500 fine. NJ Stat Ann (1979 Special Supp), § 2C:12-1(b)(4), (eff. September 1, 1979).

[54] The 26 states in which menacing is not a crime or punished as a misdemeanor without regard to whether a deadly or dangerous weapon is used and the 3 in which the crime, even when aggravated, is still punished as or like a misdemeanor.

punished as a felony. It is singularly inappropriate for this Court to change the definition of the crime of felonious assault and, in effect, mandate—by reason of the felony gun law—a minimum sentence of two years and a maximum of six years for menacing with a firearm, *i.e.,* for creating apprehension of injury without causing or intending to cause injury.

One can readily identify with the fear of a person who has a gun pointed at him. The conclusion that a person so confronted has been assaulted without regard to whether injury was intended, although inconsistent with the common-law definition of assault, is consistent with the ordinary usage of the word "assault" and with tort law which seeks to provide compensation to a person so wronged. It is a different question of public policy, however—one which the Legislature should decide—whether and to what extent the potentially severe penalties of the criminal law should be brought to bear.

We repeat that the Legislature has indicated that punishment as a misdemeanor is all that is warranted. (See text accompanying fn 46, *supra.)*

## VIII

Heretofore, when this Court has changed the definition of a criminal offense, it has applied its ruling prospectively:

"As for defendant Neumayer, we affirm the circuit court's reversal of his conviction because at the time he committed the conduct charged, this Court had not construed the statute *per Miller [v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973),] to proscribe

such conduct." *People v Neumayer,* 405 Mich 341, 368; 275 NW2d 230 (1979).[55]

Johnson and Ring are entitled to have their cases tried under the definitions of the crimes of assault and felonious assault extant when their offenses were committed, prior to the *Sanford* dictum.

Perkins states:

"In each jurisdiction where [assault was redefined to include menacing] without the aid of statute, the first case adopting the new theory resulted in a conviction for what had not been defined as a crime at the time the 'assault' was committed. *This did not violate the constitutional bar against ex post facto laws since that provision is directed to the legislative body,* but it clearly violated the underlying principle that no one should be punished for doing what had not been defined as a crime at the time it was done. Had the change been made by legislative enactment, the courts would not have permitted it to have retroactive effect." Perkins, Criminal Law (2d ed), p 117.

## IX

The concurring opinion, disagreeing with the lead opinion,

i) indicates that a specific or particular intent is an element of felonious assault and states that intent to injure is an element of felonious assault but the offense can be committed, alternatively, by an intent to create a reasonable apprehension of injury (menacing), and

ii) would hold that because of the failure to instruct on the alternative mental element the

[55] Similarly, see *People v Bloss (On Remand),* 394 Mich 79, 81; 228 NW2d 384 (1975).

instruction in *Johnson* was not "sufficient", and would remand for a new trial in *Johnson*.[56]

We agree with the indication in the concurring opinion that there is a specific or particular mental element and with its statement that the jury should be instructed that there must be i) an intent to injure or ii) if it is or is to become the law of Michigan that menacing is an alternative means of committing the offense, an intent to frighten or put in apprehension of an immediate battery.

We disagree, however, that menacing is such an alternative means of committing the offense. The concurring opinion reasons that Johnson and Ring

[56] The concurring opinion states that the only issue upon which leave was granted is "whether felonious assault includes specific intent as an element". The lead opinion and this dissenting opinion do, indeed, address issues beyond those covered by that limited grant of leave to appeal. This opinion was written in response to the lead opinion which would decide not only that felonious assault does not include a specific intent but also what are the elements of the offenses of assault and felonious assault and would overrule *Doud*.

I saw no responsible alternative but to respond to the additional points covered in the lead opinion. Statements in an opinion of the Court are read as controlling by the profession and are even regarded by members of the Court as controlling the disposition of future cases without regard to whether they are beyond the scope of a limited grant of leave to appeal. Although the lead opinion has not become the opinion of the Court, it and the concurring opinion have engendered the memorandum opinion which, like the lead opinion, is not limited to the issue covered by the grant.

In this connection, it is noteworthy that in *Sanford* the lead opinion, without any need to address the question, declared that the menacing form of criminal assault was part of the law of Michigan. That dictum,

—concerning an issue not raised by either party,

—written without aid of briefing by counsel,

—in an opinion which did not consider the earlier opinions of this court implicated by that dictum, particularly *Doud,* which the lead opinion in the instant cases says was partially overruled by *Sanford,*

—inconsistent with *Doud* and other earlier decisions of the Court,

is now said to be controlling by both the lead and concurring opinions and has been adopted in the memorandum opinion. It therefore appears that dictum cannot be ignored in the expectation that members of the Court will not regard it as precedential.

can be convicted of the "menacing type of criminal assault", although the "misconduct" with which they were charged preceded *Sanford,* because

i) *Doud* did not say that the defendant's "intent or purpose to put the victim in reasonable apprehension of an immediate battery would not support an assault conviction", and

ii) *"Sanford* [is read] as merely clarifying and restating the *Carlson observation* that there are two kinds of criminal assault—attempted battery and putting in fear". (Emphasis supplied.)

## A

The concurring opinion states that four members of the presently seated Court "adopted the reasoning and accepted the conclusion of Justice WILLIAMS in *Sanford".* Three Justices signed his opinion and two (the signers of the concurring opinion in these cases) stated that they "concur in the result reached by Justice WILLIAMS and agree with the disposition of the issues found in Parts II, III, IV and V" of his opinion.

A Justice who agrees with the "result" or "disposition" has not adopted the "reasoning" or dictum of an opinion. A Justice is, of course, free to state later that he adopts the reasoning or dictum of an opinion. Such a later agreement, however, cannot have retroactive effect on the law.

The only "issue" in *Sanford* pertinent to that case was the one there discussed in Part II, fn 1, of the lead opinion rejecting the claim that attempted unarmed robbery and assault with intent to rob being unarmed are identical crimes and the differing penalties thus violated the Due Process and Equal Protection Clauses.

This Court frequently distinguishes earlier cases

or declines to follow statements in earlier opinions on the ground that what was said in the earlier case was *obiter dictum.* A clearer case than *Sanford* for characterizing statements in an opinion as *obiter dictum* is difficult to imagine. The lead and concurring opinions in the instant cases fail to state a basis for deciding what *obiter dictum* is controlling and what may or should be ignored.

## B

The concurring opinion is correct that *Doud* did not say, in so many words, that the accused's intent or purpose to put the victim in reasonable apprehension of an immediate battery could not support a felonious assault conviction. An argument can be made that all that *Doud* decided was that the jury must be instructed that it must determine what the defendant's actual intent was, but did not define the mental element more precisely beyond saying that the defendant's actual intent was determinative.

We are persuaded that the *Doud* Court considered and rejected the alternative menacing form of assault, a view shared by the lead opinion in the instant cases:[57]

—The Court said that the law of simple assault "involves an intent or purpose to inflict a corporal hurt to another". *People v Doud, supra,* p 123. The Court thereby unmistakably said that there must be an intent to inflict an injury to constitute a simple assault.

—It then went on to address the question whether the felonious assault statute made it an offense to "point a revolver at another, accompanying the act with a threat of employment of its

[57] See Part X, *infra.*

lethal power in case a demand made is not complied with, regardless of the intent of the aggressor". *Id.,* p 124. It responded in the next sentence: "The statute speaks of an assault with a revolver or other dangerous weapon, and as the offense covered thereby was formerly punished as a simple assault, *we must infer that, in the use of the term 'assault' the Legislature intended the same to carry its ordinary meaning in connection with crimes of offered violence." Id.,* p 124 (emphasis supplied).

Since the latter statement immediately follows the earlier statement explicating the "law of simple assault" it is clear that what the Court was saying is that the definition of simple assault is incorporated into the felonious assault statute. That, of course, is the analysis of the lead opinion in the *instant cases* which proceeds on the premise that felonious assault is common-law assault with an added element. The concurring opinion does not indicate whether its signers agree with that analysis.

The *Doud* Court went on to explain its meaning, stating that while the felonious assault statute increased the penalty for such an aggravated assault it "did not eliminate the question of intent or purpose, involved in every case of assault of a criminal nature". *Id.,* p 124. It then stated "[a]t the trial defendant was permitted to testify fully as to his intent and claimed he entertained no purpose to *inflict injury.* Even though such claim was refuted by his acts, demeanor and words, defendant had a right to go to the jury with what he claimed to have been his purpose". *Id.,* p 124 (emphasis supplied). The statement that the defendant had a right to have the jury determine whether he had a purpose to "inflict injury"—

when read in conjunction with the question posed by the Court whether it was an offense to point a gun accompanied with a threat and its rejection of the judge's instruction that the defendant's acts govern and not a "secret intent *not to inflict an injury,* wholly incompatible with a declared purpose to injure, accompanied by acts manifesting a corporal hurt to one immediately menaced thereby *[Id.,* p 123 (emphasis supplied)]"—indicates that the Court rejected the concept that one can be convicted for a threatening or menacing assault without an intent to injure.

Any question whether the *Doud* Court rejected that concept is eliminated—and the lead opinion in the instant cases agrees—by the following statement: "While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, *is mentioned in some of the books* as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused *under this statute." Id.,* p 125 (emphasis supplied).

The Court thereby indicated that it had considered the argument in the prosecutor's brief calling the Court's attention to decisions in other jurisdictions making menacing or threatening assaults an offense and concluded that was not the law of Michigan.

One can, of course, say that all that the Court was saying was that the fear *engendered* does not govern and that it did not say that the *intent* to create such fear did not govern. Reading the opinion as a whole, however, it is clear that the Court also rejected the concept that the offense is established upon proof of the intent to create such fear.

The defendant in *Doud* had stated that he in-

tended to frighten the victims. The Court indi-
cated, minimally, that is not enough:

"It is claimed that defendant intended no harm to the
workmen and had the revolver for its *moral effect, to
scare them off his land;* that the revolver was a bor-
rowed one *and he did not know whether it was loaded
or not,* and in the brief it is said:

" 'In the case at bar, the attention of the court is
invited to the fact that there is no proof whatever that
the revolver held by Doud was loaded. The only testi-
mony on the point is that given by Mr. Doud himself,
who testified that he did not know whether the gun was
loaded or not.

" 'It has been held that there is no presumption that
a revolver so used was loaded and that the burden of
proof is on the State;' citing *State v Napper,* 6 Nev 113
[1870]; *Price v United States,* 85 CCA 247; 156 F 950 (15
LRA [NS] 1272); *Fastbinder v State,* 42 Ohio St 341
[1884]." *People v Doud, supra,* p 125.

The Court's conclusion that evidence that the gun
was unloaded is a matter of defense is plainly
inconsistent with any construction of the felonious
assault statute that would make threatening or
menacing an offense.

It could, indeed, be argued that the *Doud* Court
was not then adverting to the definition of assault
—all that the Court was saying was that for a gun
to be a "dangerous weapon" it must be loaded, and
if the jury finds that it was not loaded it was not
dangerous. But the Court had already said that
threatening assaults were not offenses at common
law and hence a *simple assault* could not be
proved by evidence of threatening or menacing
without intent to inflict corporal hurt. It would
have been a convoluted reasoning process which
would have brought the Court to conclude that
theatening or menacing was an assault for pur-

poses of *felonious assault* but evidence that the gun was unloaded was material by way of defense. Unless the defendant states and the victim believes that the gun is unloaded and perhaps even if the victim believes or hopes it is unloaded, a pointed gun is likely to create a sense of fear and apprehension. Query: What is the point of pointing it except to cause the belief that it may be loaded? If the Court thought that it was the legislative purpose to make intent to create or engender fear or apprehension a means of committing felonious assault, so that a redefinition of common-law assault was required, it would not have concluded that evidence that the gun was unloaded was admissible by way of defense.

The Court had noted that the authorities were divided on the materiality of whether the gun was loaded. It was not compelled to find that evidence that it was unloaded was a matter of defense. It could have concluded with other courts that such evidence is not a defense. The most reasonable conclusion is that it concluded that it was a defense because it had already concluded that the creation of fear did not govern upon the intent or purpose of the accused, that creating such fear and apprehension was not felonious assault.

Any doubt regarding the view taken by the Court is resolved in the following paragraph of its opinion:

"Several of the cases last cited involved the rule with reference to simple assault and it is claimed on the part of the defendant that the rule applied in cases of simple assault has no application to assaults with a dangerous weapon. Having in mind the language of *our statute,* that it specifically forbids an assault with a revolver, and the evident reason underlying its enactment, and that it *involves no intent or purpose beyond such as*

*relates to simple assaults and raises the grade only when assaults are committed with designated forbidden weapons,* we think the cases cited with reference to the rule in simple assaults are applicable." *Id.,* p 129 (emphasis supplied).

The *Doud* Court's statement that the statute "involves no intent or purpose beyond such as relates to simple assaults" coupled with its earlier statement that the law of simple assaults involves an intent or purpose to inflict a corporal hurt to another makes clear that the Court did not leave open the question whether threatening or menacing assaults were part of the law of Michigan.

C

In all events *Doud* did not hold that threatening or menacing assaults were part of the law of criminal assault in Michigan.

We return to *Carlson* and *Sanford.* The concurring opinion relies on *Carlson* more than *Sanford,* stating that *Sanford* merely clarifies and restates the *Carlson* "observation" and that *Carlson* was the first pronouncement on the matter.

By stating that the question was resolved in *Carlson,* the concurring opinion need not grapple with i) whether the law of assault and of felonious assault should be *changed,* ii) if so, giving a *reason* for the change, and iii) whether a change in the law can properly be applied *retroactively* to Johnson and Ring whose offenses preceded the *Sanford* announcement.

While *Carlson* may have "observed" it did not "hold" that there are two kinds of criminal assault —attempted battery and putting in fear. It did not, as did *Sanford,* declare that *either* the Cyclopedia or Bishop definition set forth in *Carlson* was an

adequate definition. It said rather that the two definitions "taken together" "may be said" to include all necessary elements. To conclude that two definitions, which *"may* be said" to include all necessary elements when "taken *together"*, can be taken separately and establish two different kinds of criminal assault is to ignore both the cautionary "may be said" and the collective "taken together".

An "observation" is, definitionally, nothing more than dictum. The dictum (in *Sanford)* "clarifying" dictum (in *Carlson)* is still dictum. Query: Do two "dictums" make a holding? No, dictum plus dictum are dicta.

That *Carlson* did not hold, although it did observe, that there are two kinds of criminal assault —attempted battery and putting in fear—was the conclusion in the lead opinion in *Sanford:*

> "While the introductory language presenting the definitions of the two treatises, 'We cite two, which taken together, may be said to include all the necessary elements' *is susceptible to the conjunctive interpretation* given by the Court of Appeals in this case making the Bishop definition a necessary element along with the Cyclopedia definition, *a disjunctive interpretation is also possible,* namely that either the Bishop or the Cyclopedia definition is sufficient alone. The facts in *Carlson* do not establish either the conjunctive or the disjunctive interpretation because the record disclosed facts that would satisfy either or both definitions." *People v Sanford, supra,* pp 477-478 (emphasis supplied).

The signers of the concurring opinion have now associated themselves with the *Sanford* reasoning as well as the conclusion and disposition of the issue presented in that case. It is difficult to square the *Sanford* conclusion that *Carlson* is subject to two interpretations with the concurring opinion's

apparent conclusion in the instant cases that the law of Michigan proscribed threatening or menacing assaults *before* the commission of the charged offenses by the defendants who were, as that opinion puts it, "charged with pre-*Sanford* misconduct".

There was no need in *Carlson* to make a choice between the two definitions. The *Carlson* observation that two different kinds of assaults had been referred to in the books and that taken together they may be said to constitute all the necessary elements was merely judicial overture to deciding the issue presented in that case—not an instructional issue but one concerning the sufficiency of evidence. The Court, applying the doctrine of conditional assault, held only that "[w]here, as in this case, an assault is threatened, coupled with an unlawful condition, the question to be decided is whether the *acts done are sufficient to be submitted to a jury"*. *People v Carlson, supra,* p 429 (emphasis supplied).

Further, if *Carlson* had *held* that there were two different kinds of common-law criminal assault— attempted battery and putting in fear—then *Doud* could not properly have said that simple assault "involves an intent or purpose to inflict a corporal hurt to another", an "intent to do an injury". The *Doud* Court, citing and therefore aware of *Carlson,* did not read it as creating two different kinds of simple or criminal assault.

Thus it is asserted in the concurring opinion, but not the lead opinion, that the law was changed before *Sanford* was decided to include threatening or menacing assaults, although the lead opinion in *Sanford* says the *Carlson* Court did not say that and the signers of the concurring opinion now say they adopt the *Sanford* reasoning, and there is an

acknowledgment in the lead opinion in the instant cases that *Doud* is inconsistent with the *Sanford* dictum and a claim that it was superseded by that dictum.

The rule in this state has been that a "criminal statute ought to be so plain and unambiguous that 'he who runs' may read, and understand whether his conduct is in violation of its provisions".[58] Measured by that standard or a lesser standard, it could not be said before or even after the plurality *Sanford* pronouncement, until today, that this Court had declared that threatening or menacing assaults were part of the law of simple or felonious assault. If Gillespie and two commentators concluded to the contrary (see fns 32-34 and accompanying text, *supra)* and the circuit judge in *Ring* concluded to the contrary and it takes the kind of explication and distinguishing set forth in the lead opinion in the instant cases and, indeed, the overruling of earlier decisions, it cannot properly be said that a defendant could run and read or, more simply, that he had been forewarned.

## D

The lead and concurring opinions, in combination with the memorandum opinion, have changed the law. That change has been made because a majority of the Justices apparently feel that threatening or menacing assaults should be subject to greater penalties than imposed by the statute which makes pointing a gun without malice a simple misdemeanor.

We do not question the power of the Court to change the definition of a common-law offense or to revise an earlier construction of a statute. Our

[58] *People v Ellis,* 204 Mich 157, 161; 169 NW 930 (1918).

concern is that the Court does not state that that is what it is doing, but, rather, reaches that result by an unwarranted reading of earlier precedent. When a Court overrules its earlier decisions it should acknowledge what it is doing and should give a reason therefor.

E

Having so changed the law, the Court should promptly address a question which is plainly implicated by its holding today. In *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975), this Court said that as a matter of policy a lesser offense instruction shall not be given where the charged offense can lead to a sentence of two or more years and the lesser to not more than one. Recently, in *People v Miller*, 406 Mich 244; 277 NW2d 630 (1979), we revised that policy with regard to larceny over and under $100.

A similar revision is now in order with regard to the lesser offense of intentionally pointing a gun and perhaps even simple assault.

If a jury is convinced that the defendant is guilty of some wrongdoing it should be able to convict him of a lesser offense rather than convict him of the greater offense as the only alternative to acquittal. In cases such as these the question of guilt or innocence will generally turn on subjective and often close questions of the defendant's intent (whether to injure or to threaten or menace). The jury should have the opportunity, such as it now has with regard to valuation of property, of choosing a lesser offense.

X

The memorandum opinion implicitly decides

that Johnson and Ring can be convicted of felonious assault on a menacing theory although their conduct preceded *Sanford.* It does not justify this result in light of the following:

i) The lead, concurring and memorandum opinions rely on *Sanford* for the proposition that a simple criminal assault can be made out by an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

ii) The lead opinion acknowledges that *Doud* stated a "rule of law"[59] and that the rule of law so stated was that an assault was not made out by "merely put[ting] in reasonable fear or apprehension" and states that rule of law "has changed, too, and *Doud* is overruled here also", such change and overruling having apparently been effected by *Sanford.*[60] The signers of the lead opinion thus acknowledge that the law stated in *Doud* was not superseded before *Sanford.*

The signers of the concurring opinion do not, in so many words, claim that the rule stated as dictum in the lead opinion in *Sanford* was earlier stated as holding. Rather, they read *Sanford* as

[59] The lead opinion acknowledges that *Doud* had rejected threatening or menacing assaults by quoting the following from the *Doud* opinion:

"While the fear of one assaulted, arising from reasonable apprehension of bodily hurt, threatened by another having means and ability to inflict the same, is mentioned in some of the books as proper evidence to go to the jury, we do not understand that such fear governs upon the question of the intent or purpose of an accused under this statute." *Doud, supra,* p 125.

Immediately following the quotation from *Doud* it states:

"As a consequence, it must be recognized that the rule of law as stated by this Court in *Doud* as to an assault not existing if the victim is merely put in reasonable fear or apprehension of what the defendant is doing has changed too and *Doud* is overruled here also."

[60] The lead opinion states that while *Burk* did not specifically overrule *Doud,* it was directly opposite to it on the necessity of charging specific intent and to that extent superseded *Doud:* "so *Burk* supersedes *Doud* on that point."

"merely clarifying and restating the *Carlson* observation that there are two kinds of criminal assault —attempted battery and putting in fear". But *Sanford,* which is relied on for the proposition that Michigan law makes it a crime to commit menacing or threatening assaults, expressly acknowledged that *Carlson* was subject to alternative interpretations. The concurring opinion claims only that *Sanford* "clarified" *Carlson's* observation, an observation which the lead opinion acknowledges was followed by a holding, in the felonious assault case of *Doud,* stating a rule of law to the contrary and rejecting the alternative reading of *Carlson* today adopted.

While there is a clear majority of the Court (the signers of the lead and concurring opinions) to state that menacing or threatening assaults are a crime, they have not agreed on a rationale which addresses the fact that this new rule of law was, following *Doud,* newly suggested in *Sanford* —after Johnson and Ring had committed the acts alleged.

We have joined with the Court in the memorandum opinion, although we disagree with its underlying thesis, because, having taken these cases to attempt to clarify the law in this area, we should not leave it unresolved with 3-2-2 opinions. The very signing of a memorandum opinion in these cases, to avoid further non-precedential decisions, underscores that *Sanford* was non-precedential and that the law is changed only today when a majority of the Court joins in one opinion, the memorandum opinion.

Henceforth, over our dissent, the law of Michigan will be that a threatening or menacing assault is a crime. But that has not heretofore been the law. The populace has not been forewarned of this Court's decision which is nevertheless being applied retroactively.

Concern is often expressed about overruling decisions of this Court and the Court usually gives consideration to the impact of a change in the rule of law and whether it should be prospective or retroactive. There is no recognition of this issue in the lead, concurring or memorandum opinions.

It is fundamentally wrong to apply this new rule of substantive law, making a menacing assault a crime, retroactively to acts committed before the *Sanford* pronouncement or, indeed, to acts committed before the filing of the memorandum opinion which for the first time declares in an opinion signed by four Justices that the rule there stated is to be the law of Michigan.

We would reverse *Johnson* and remand for a new trial, and affirm *Ring* and remand for trial.

KAVANAGH, J., concurred with LEVIN, J.